Stanard, J.
delivered the opinion of the court.
The first question is, were these cases in a condition to admit the final decree which was rendered by the *530 court below, by which the bill in the original suit was dismissed, and the injunction awarded in the second made perpetual. As the cases were heard at the instance of, and final decrees sought by, both parties, if there be any construction of the pleadings that could place the cases in the predicament to justify a decision binding on the rights of all, such construction should be made.
In the original case, the executor of William Kyle, holding the bond of M’lver, and claiming title thereto as a part of the partnership subject of D. Sf W. Kyle, that had been allotted to W. Kyle on the dissolution of that firm, and consequently claiming the benefit of the security that the deed of trust from the debtor afforded for the debt, sought the enforcement of that security. By the bill in that suit, Robert Kyle, who had purchased, as he alleges, the land embraced by the deed of trust, at a sale made under a subsequent deed of trust, to secure another debt, and who by his tenant was possessed of that land, was not made a party defendant, though in the progress of it, without amending the bill, he was treated as a defendant, and proceeded against as an absent one. In this predicament the case was, in September 1837, heal’d, Robert David Kyle being treated as absent defendants, as to whom the order of publication had been duly executed; and on that hearing, a decree was rendered in favour of W. K.’s executor against the debtor M’lver, for 561 dollars 744 cents, with interest from 12th of December 1812, and that the land should be sold to provide the means of paying this debt. Robert Kyle, thus proceeded against as an absent defendant, and that irregularly, and a decree being rendered injurious to his interests, and, as he contends, invading his rights, might, had he thought proper, have taken the remedy the statute affords to absent defendants against whom decrees may have been rendered, by entering an appearance and filing his answer, or on such appearance sought a correction of the irregularity in treating him, *531 and decreeing on his interest, as an absent defendant, though not named in the bill as a party. So far as he sought a decision of the case on the merits, his answer would have set forth his objections to the claim of the plaintiff, and his rights in the land, and on such answer, and the proofs that might be offered, a decision could have been made on the merits. He, however, instead of using this form in presenting his objections to the plaintiff’s claim, and his rights in the land, presented them in the form of a bill, by which he sought a supersedeas to suspend the execution of the interlocutory decree in the first suit. This second suit being matured, both cases were heard together for a decision on the merits of the pretensions of the parties respectively; and such decision was accordingly made by the decree, from which this appeal was taken. The cases being thus blended by the concurring action of the parties, the difficulty of proceeding to a decree in the first suit, in which Robert Kyle was not by the pleadings made a defendant, so as to act on his rights and interests as a defendant, becomes one of mere form. He has made himself a party to the litigation, and can have all the benefit that he could have obtained had he been named a defendant in the original bill, and then appeared and answered, under the privilege reserved to absent defendants by the statute, by giving to his bill the double function of an answer to the original bill, and a cross bill impeachiug the title of the plaintiff, and the proceedings in the original suit. By so regarding the bill of R. Kyle, even the formal difficulty is obviated. I see no just objection to prevent the court from so regarding it, especially as it is a means by which the object of both parties, that of having a hearing and decision of the cases on the merits, is attained. Uniting the cases, and treating them substantially as one, in which the pleadings set out all the pretensions of the parties of claim or defence, and assigning to them the *532 function of claim or defence set forth in bill or answer, as they serve one or the other purpose, will attain every object of the most regular and formal pleadings; and this, I think, may properly be done.
The questions on the merits are, 1st. Ought the debt claimed as due from M’lver, to be considered as subsisting and unsatisfied ? The negative is contended for on two grounds. 1st. That the lapse of time furnishes a presumption that the debt was paid. 2clly. That it was paid by the proceeds of linens that the creditors received from the debtor some years after the date of the bond.
The presumption of payment is repelled by the distinct admission of the debtor that the debt has not been paid, but is still due. As a general proposition, the sufficiency of such admission to repel the presumption of payment is obvious and demonstrable, and would not be questioned if M’lver alone was interested in the fact. It is objected that it should not avail here, because there are indications of collusion between the executor of W. Kyle and M’lver, and that M’lver was influenced by hostility to R. Kyle to make the admission. I do not discern in the record evidence of the alleged collusion. The only indication suggested is the fact, that M’lver answered, making the admission before he was compelled to do so. That circumstance is too slight to warrant and support such a serious imputation. In answering he has done no more than he might have been compelled to do; and if in his answer he had evaded to state whether or no the debt was unpaid, and relied on the lapse of time as presumptive evidence of payment, he could have been coerced to give a categorical answer to the allegation that it had not been paid, and such answer admitting the allegation, would have overruled the defence founded on the lapse of time. Baker v. Morris, 10 Leigh 284. Ostensibly the admission was against the interest of M’lver; and though Robert *533 Kyle would not be bound by it, could he prove by other evidence that the payment was in fact made, the surmised hostility of M’lver to him does not so far discredit the admission as to justify the court in treating it as a perjury, or wholly disregarding it. Discredit, however, is attempted to be cast on it, by the fact that it admits the debt remains wholly unpaid, whilst the account from the books of D. Sf W. Kyle, extracted and filed by Campbell the executor of William Kyle, shew that it is subject to a credit of 88 dollars 66 cents as of the 31st of December 1817. Now, on looking at that account, the credit of 88 dollars 66 cents does not arise from any payment of M’lver on account of the debt in. question, but results from a credit to M’lver of 225 dollars 81 cents, for a debt due to him from Scott Kyle. Such a debt was not a payment of M’lver in part of his bond to D. W. K. It was not even a set-off, and only becomes a credit by the assent of W. Kyle or his executor, of which it does not appear that M’lver was apprised. That credit, thus spontaneously allowed, casts a very slight if any shade on the credit to be given to M’Tver’s admission in his answer. But furthermore in this case, the reliance of Robert Kyle on the lapse of time as presumption is blended with the allegation of a specific mode of payment; and in such case, the disproof of the specific mode of payment would much impair if not destroy the efficiency of the presumption from lapse of time, especially if such disproof shews the debt to be a subsisting one within twenty years before suit.
The specific mode of payment as alleged by Robert Kyle, is by the receipt of a parcel of linens from M’lver; and this payment, he alleges, is shewn by the books of D. W. Kyle. The executor of William Kyle exhibits with his answer an account as a fair transcript from the books of D. &f W. K. in respect to these linens; and that shews, that the linens were received and sold *534 by D. W. Kyle for M’lver on commission, and the wp0]e procee(js thereof covered by advances made by D. Sf W. Kyle to M’lver, those advances commencing in September 1815. This account, if it is to be respected as evidence, entirely disproves the pretension, that the debt in question was paid in the specific mode suggested by Robert Kyle. My opinion is, that it must be regarded as evidence. The books of D. 6¡' W. K. had been referred to by R. Kyle, as shewing the payment by the receipt and proceeds of the linens. The answer of W. Kyle’s executor exhibited the account as a copy from the books, and without any exception or objection of either party, the cases were heard on the bill, answers and exhibits. The books were evidence on this subject, and the copy being exhibited, and the eases heard among other things on the exhibits without objection, it was thereby conceded as evidence as far as the books could be so. By necessary implication it was taken as the substitute for the books, or a proved copy from them. It was regarded by the court below as evidence, as is evinced by the remarks of the judge of that court, commenting on this account, in his written opinion in the case.
This account being evidence, it, as before remarked, disproves the suggestion that the debt in question was in whole or in part paid by the proceeds of the linens. It corrects, and disproves other suggestions made by Robert Kyle in his bill, and by David Kyle his agent, by whom the affidavit of the truth of the bill was made. These suggestions are that the linens were received about the year 1813, and formed a credit against the debt in question, at the dissolution of the firm of D. Sf W. Kyle on the 1st of January 1825, and consequently refutes the pretension that at the dissolution the debt of M’lver, secured by the deed of trust, had been paid by the linens. The suggestion that the 88 dollars 66 cents by which that account is balanced, and that sum passed *535 to the credit of the deed of trust, may be the 88 dollars mentioned as received on account of the debt of M’lver and Morris contracted with D. Sf W. K. at Lynch-burg, seems wholly unfounded. The balance 88 dollars 66 cents is the result of the spontaneous credit to M ’Ivor with D. Sf W. Kyle for 225 dollars 81 cents due to him from Scott Sf Kyle, and is credited as of the 31st December 1817. The 88 dollars in part of M’lver and Morris’s debt was received by D. K. on the 25th of May in the year 1825, and that not for the debt of M’lver and Morris, secured by the deed of trust of November 1825, under which R. Kyle claims. That payment was made before that deed of trust was given, and further payment was also made to D. K. of 1000 dollars, in part of the debt of M’lver and Morris before the execution of the deed of November 1825, and the debt to D. W. K. of M ’Ivor and Morris of 362 dollars 6 cents mentioned in that deed, was the balance due D. Sf W. Kyle, after crediting the payments of 88 dollars and 1000 dollars made to D. K. in the year 1825.
On the whole, I think it satisfactorily appears that the debt in question is unpaid, and is subject to no credit but that of 88 dollars 66 cents spontaneously given in the account from the books of D. Sf TV. K. exhibited with the answer of William Kyle’s executor.
The only question remaining is, ought this debt to be regarded as the property of William Kyle, or the property of D. Kyle, or the social and undivided property of D. & W. Kyle 1
It is admitted by the bill of R. Kyle, which is verified by the oath of D. Kyle, that on the dissolution of the firm of I). Sf W. Kyle on the 1st of January 1825, the outstanding debts were divided between the partners, and the ground on which it is denied that W. Kyle did become entitled to the debt of M’lver is, that that debt was shewn by the books to be paid. The *536 falsehood of this suggestion has already been shewn. outstanding debts were divided, or what was the respective responsibilities of the partners to the firm at the time of the dissolution, is not in proof. We are no{. informed, of the amounts respectively received by the partners, since the dissolution, of the outstanding debts due the firm. It does appear, however, that D. K. received in the year 1825, on account of the debt of M 'Iver and Morris, contracted at the Lynchburg store, the sums of 88 dollars and 1000 dollars, and it does not appear that W. Kyle received any of the outstanding debts. The significant fact, however, of the possession of M’lver’s bond by W. K. does appear, and if he had received that debt, it would be less than D. K. has received of the outstanding debts. The presumption that this debt became the property of William Kyle on the dissolution, arising from his possession, and, as far as appears, unquestioned possession of the bond, is corroborated by the falsehood of the suggestion of D. Kyle that that debt had been paid, and that the books afforded the proof of that fact, by the absence of any proof or even suggestion, that his receipt of that debt would give him an undue share of the partnership effects, by the forbearance of D. K. to set up any claim to that debt during the life of William Kyle, and by the ascertained receipt by D. Kyle of the partnership debts to a larger amount than this debt. Under all the circumstances of this case, the prima facie evidence that the possession of the bond affords, of title in the possessor, so corroborated, justifies the conclusion that as between D. Sj' W. K. the title to this debt was in W. Kyle, and it ought not to be regarded as the property of D. Kyle, or the social property of D. Sf W. Kyle.
The decree of the court was as follows :
This day came the parties by their counsel, and the court having maturely considered the transcripts of the *537 records of the said decrees and the arguments of coun- ' sel, is of opinion that the debt of M’lver, secured by the deed of trust of the 10th of September 1812, is a subsisting debt unpaid, and subject to no other credit than the credit of 88 dollars 66 cents as of the 31st December 1817, shewn by the extract from the books of David Sp William Kyle, Richmond, exhibited with the answer of Campbell, executor of William Kyle, to the bill of Robert Kyle, and resulting from the credit given in that account to M’lver of 225 dollars 81 cents, due to him from Scott Sp Kyle ; and that it is a charge under the said deed of trust on the land therein mentioned and conveyed.
The court is further of opinion, that William Kyle was, and his executor is, entitled to the said debt of M’lver, to the exclusion of David Kyle, claiming it either as surviving partner of David Sf William Kyle, or as the social property of David Sp William Kyle, and that the decree of the court below on the original and amended bills of William Kyle’s executor, in the first suit, and perpetuating the injunction awarded to Robert Kyle in the second suit, to the execution of the interlocutory decree in the first suit, is erroneous. It is, therefore, adjudged, ordered and decreed, that the said decree be reversed and annulled, and that the appellee Robert Kyle pay to the appellant the costs by him expended in the prosecution of his appeal in this court; and this court, proceeding to render such decree as the court below ought to have rendered, and considering the bill in the second suit as serving the functions of an answer of Robert Kyle in the first suit, and as a cross bill, doth adjudge, order and decree, that the injunction awarded in the second suit be discharged, as no longer of any use or effect. That the interlocutory decree in the first suit of the 13th of September 1837, be set aside and annulled ; and as a decree in both suits, (regarding the second as aforesaid as a cross bill,) the court doth *538 further adjudge, order and decree, that Hugh Campbell, the executor of William Kyle deceased, (the plaintiff in the first suit,) recover of the defendant M'lver the sum of 561 dollars 74J- cents, with interest thereon from the 10th of December 1812, till paid, subject, however, to a credit of 88 dollars 66 cents, as of the 31st December 1817, and that if the said sum of money and interest, subject to the said credit, should not be paid before the lapse of sixty days from the entry of this decree in the court below, that the sheriff of the county of Botetourt, or such other commissioner or commissioners as the court below may appoint for that purpose, do expose to sale the land in the said deed of trust of the 10th of September 1812 mentioned, after first advertising the time and place of sale in some newspaper published in the town of Fincastle for four weeks, and posting the advertisement of the sale at the front door of Botetourt courthouse, on some court day previous to the day of sale, upon a credit of six, twelve and eighteen months, taking bonds from the purchaser with one or more sureties, and retaining the title as a security for the purchase money, and that the commissioner or commissioners who may act in the premises, make report of his or their proceedings to the court, in order to a final decree. Which is ordered to be certified to the said circuit superior court of law and chancery for the county of Botetourt.