# Charleston.

## Hill and ux. *v.* Proctor.

## Proctor *v.* Hill and ux., *et al.*

### Decided April 28, 1877.

1. A case where two causes relating to the same subject were heard together and a final decree rendered, which in a great degree applies to the other, in which it was held that an appeal taken by the plaintiffs in one case, who were defendants in the other, from said final decree, brought up both causes for review by the appellate court, all the parties to said causes being before the appellate court either by summons executed and counsel, or voluntary appearance by counsel.

2. The existence of a controverted boundary does not constitute a sufficient ground for the interposition of courts of equity to ascertain and fix that boundary. It is necessary to maintain such a bill that some peculiar equity should be superinduced. There must be some equitable ground attaching itself to the controversy.

3. An exception to a deposition, whether endorsed on it or taken and entered on its face in the process of taking it, or written on a separate paper and filed in the cause, (except upon the ground of incompetency, in which no exception is necessary) not having been brought to the notice of the court below, or passed upon by that court, ought to be considered as having been waived, and cannot be noticed by the appellate court; and a general judgment or decree of the court below against the party making the exception, cannot be considered as involving a decision upon the exception.

4. In a suit by the vendee against the heirs of the vendor, to compel the conveyance by deed of land sold by the vendor, in his lifetime, to the vendee, generally the personal representative of the deceased vendor is a necessary and proper party to the cause.

1877. January Term.

| | |
|---|---|
| 10 | 59 |
| 34 | 414 |
| 10 | 59 |
| 35 | 52 |
| 10 | 59 |
| 38 | 201 |
| 38 | 750 |
| 10 | 59 |
| 42 | 608 |
| 10 | 59 |
| 43 | 37 |
| 10 | 59 |
| 47 | 192 |
| 10 | 59 |
| 48 | 541 |
| 10 | 59 |
| j 52 | 600 |
| j 52 | 607 |
| 10 | 59 |
| j54 | 462 |
| 10 | 59 |
| 55 | 377 |
| 55 | 493 |
| 10 | 59 |
| 61 | 446 |
| 61 | 485 |
| 10 | 59 |
| 62 | 219 |
| f62 | 499 |
| 10 | 59 |
| 65 | 717 |
| 10 | 59 |
| 66 | 250 |
| 66 | 306 |

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

5. All persons materially interested in the subject of controversy ought to be made parties in equity, and if they are not the defect may be taken advantage of, either by demurrer or by the court at the hearing.

6. If it appear on the face of the record that the proper parties are wanting, the decree will be reversed by the appellate court, unless the objection was expressly waived in the court below.

7. If the plaintiff has shown a right to relief against the defendant before the court, his bill ought not to be dismissed, because the proper relief cannot be extended to him, in consequence of his omission to make other necessary parties. But in such case the appellate court will send the case back that proper parties may be made.

8. The twenty-second and twenty-third section of chapter one hundred and thirty of the code of 1868, make no material change in the common law as to husband and wife giving evidence for or against each other in a cause in which they are parties, except in an action or suit between husband and wife. In such case, the twenty-third section, and especially the fifth exception thereof, so modifies the common law as to allow husband and wife to be witnesses for and against each other in suits between themselves. It may be that in some cases brought by husband and wife, for certain causes of action, the wife, where she is the meritorious cause of action, may be admitted to give evidence. But that question did not arise in this case, and is, therefore, not now decided.

9. Evidence is admissible to prove declarations as to the identity of a particular corner tree or boundary, made by a person who is dead, and had peculiar means of knowing the fact; as for instance, the surveyor or chain carrier upon the original survey, or the owner of the tract, or of an adjoining tract calling for the same boundary, and also tenants and processioners and others, whose duty or interest would lead them to diligent enquiry and accurate information as to the fact, always excluding those declarations which are liable to the suspicion of bias from interest.

10. A case in which the declarations of a deceased former owner of land were admitted as evidence, and also in which it was held declarations of such former owner were inadmissible as evidence under the above rule. See opinion of the Court in this case.

An appeal from a decree of the circuit court of the county of Kanawha, pronounced on the 21st day of

1877.
January Term.

Hill and ux
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

June, 1873, in two causes heard together, in one of which G. W. Hill and wife were plaintiffs, and Mayberry Proctor was defendant, and in the other Mayberry Proctor was plaintiff, and G. W. Hill and wife and others were defendants.

The appeal was granted upon the petition of G. W. Hill and wife.

The case sufficiently appears in the opinion of the Court.

The Hon. Joseph Smith, Judge of the seventh judicial circuit, presided at the hearing below.

*J. H. & J. F. Brown* for appellants:

*Smith & Knight* for appellees:

HAYMOND, JUDGE:

At June rules, 1868, Mayberry Proctor filed his bill in the circuit court of Kanawha county, against George W. Hill and Rebecca, his wife, James E. and Betsy Kendall and Biddy Ann Woody, as heirs at law of Joseph C. Kendall, deceased. The bill alleges, that on the 9th day of January, 1844, Joseph C. Kendall made a written contract, by which he agreed to convey to Berry Proctor (that being the name by which he was familiarly called) a tract of land in Kanawha county, on waters of Blue creek, to-wit, on the Big Fork of Blue creek, from the first hollow below the improvements where Simon Oxier lived, crossing the creek at right angles so as to include both improvements where Childers Branham then tended, and where said Oxier tended in 1843, and thence to said Kendall's upper line, excepting the minerals on said land. The said contract is exhibited with the bill, as exhibit " A." The bill further alleges, that the consideration to be paid by the plaintiff for said land was $300, of which $265 was paid at the date of the contract, and the balance has since been paid and discharged, as will be seen by the inspection of said contract and the endorsements there-

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., *et al.*

on ; that by the said contract, said Kendall bound himself, and his heirs, to make a conveyance for said land, when the balance due on the land should be paid. The bill further alleges that Joseph Kendall, at his death, left, as his heirs, James E. Kendall, Betsy Kendall, Rebecca Kendall, whose husband is George W. Hill, and Biddy Ann Woody, who married — Woody, who has since died. The bill prays that, if necessary, a survey of said tract may be ordered by this Court to ascertain the true and precise boundaries of said tract of land, and that the defendants may be required to make to plaintiff a good and sufficient deed therefor. The bill also contains a prayer for general relief. The said contract is filed, but it does not appear to be marked " A." The contract is in these words :

" *Know all men by these presents :* That I, Joseph C. Kendall, am held and firmly bound to Berry Proctor, in the sum of $300, to make to him all my right, title and interest to a certain piece of land, lying on the Big Fork of Blue creek, from the first hollow below the improvement where Simon Oxier lived, crossing the creek at right angles, so as to include both improvements where Childers Branham tends, and were tended in 1843, and thence to Kendall's upper line, minerals excepted ; and when said Proctor shall pay the residue of said $300, which is $45, the said Kendall having received $265, then he, the said Kendall, binds himself and to —— the above right.

" Given under my hand this 9th day of January, 1844.
[Signed] " JOSEPH C. KENDALL.
" Witness—M. JONES."

This indorsement appears on said contract : "Received payment in full, by an order, verbal, on W. Tompkins, April 16, 1844."

[Signed] " J. E. KENDALL."

A diminution of the record in this case was suggested by the appellees, and a writ of *certiorari* awarded by the court and duly issued to the clerk of the circuit court of

Kanawha county, commanding him to certify and transmit to this court the omitted parts of said record, &c. And the clerk of said circuit court, in obedience to said writ, certified to this court a copy of an answer of said Hill and wife, which the clerk certifies has this indorsement thereon "1868,. July Rules. This ans. and ex. filed." The answer appears to have been sworn to by the defendant, Geo. W. Hill, on the 28th day of July, 1868. The said indorsement on the answer is not signed by the clerk, nor does it appear that the filing of the answer was entered on the rule book at July rules, or at any time. Nor is there any order of court showing the filing of said answer. It appears that on the 16th day of October, 1868, the cause " came to be heard upon the bill and exhibits taken for confessed, and set for hearing as to all the defendants, they having been duly served with process, and still failing to appear and plead, demur or make answer thereto, and was argued by counsel· And on motion of complainant, it is adjudged, ordered and decreed, that the surveyor of this county, do, after giving reasonable notice to the parties, go upon the premises described in complainant's bill and claimed by him to have been purchased of Joseph C. Kendall, and survey and lay off the bounds of the same according to the description made thereof in the title bond of said Joseph C. Kendall to the complainant, bearing date the 9th day of January, 1844, and filed as an exhibit with complainant's bill, and that he return a report, &c." On the 20th of October, 1870, the court made an order by " consent of the counsel of the respective parties," displacing the surveyor, and appointed Thomas J. Mathews, and ordered him to do all the surveying and perform all the duties required of said surveyor by the order appointing him, &c. It also appears from the record, that on the 8th day of November, 1872, the court made this entry in the cause of record : " The defendant's, by their counsel, this day tendered their answer to the complainant's bill, and the complainant

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et al.

takes time to consider thereof." Immediately after this entry as the record comes to us, appears what purports to be " the joint answer of Geo. W. Hill, Rebecca Jane Hill, James E. Kendall, Elizabeth A. Kendall, Biddy Ann Clay, *alias* Woody, *alias* Jarrett, Ernest A. Kendall and his sister, Elizabeth J. *Cemmer*, to the bill of complaint of Mayberry Proctor, exhibited against them in the circuit court of Kanawha." This answer in the body thereof is partly joint and partly several. Elizabeth A. Kendall, for herself in said answer, says that she is the widow of said Joseph C. Kendall, and claims to be entitled to dower in the land claimed by plaintiff. She also claims that her husband only sold plaintiff two hundred acres of land. Ernest A. Kendall and his sister Elizabeth, for answer for themselves, among other things, say that " they are the lawful heirs and devisees of Joseph C. Kendall, according to his last will and testament, in all the real estate and mineral reserves of which said Joseph C. Kendall died seized, and that they claim, by virtue of his will, all the unsold land. See will on record, &c." This answer appears to have been sworn to by Geo. W. Hill and Elizabeth A. Kendall. It appears that the plaintiff took the depositions of Page Stanley and Stephen Morris, and, before taking the same, he addressed a notice of the time and place of taking the same " to James E. Kendall, George W. Hill and Rebecca, his wife, *Betsy Kendall, widow of Joseph C. Kendall*, and Biddy Ann Woody." This notice seems to have been served on *Betsy Kendall* among others. The surveyor, Mathews, made his report in the cause as follows : " Your surveyor respectfully reports that the plat and reports in the cause of G. W. Hill *v.* Mayberry Proctor will fully explain this cause to which reference is made." It further appears that at July rules, 1868, said George W. Hill and his said wife filed their bill against Mayberry Proctor. In this bill it alleged that George W. Hill married Rebecca J. Kendall, the daughter of Joseph C. Kendall, deceased ; that on the 13th

day of August, 1853, the said Joseph C. Kendall sold and conveyed to the plaintiffs, for the sum of $900, a certain tract of land lying partly in Kanawha county and partly in Nicholas county. (A certified copy of the conveyance is filed as exhibit No. 1). The bill further alleges that " it will be seen that the lines of the said tract call for the land claimed by Mayberry Proctor, and with his abutals and call, about 600 poles; that plaintiffs are informed that the said Joseph C. Kendall had agreed to sell a certain quantity of land to the said Proctor previous to the sale, and conveyed to them as aforesaid, and had entered into a written contract or agreement to that effect with him; that understanding there was such a contract in the possession of the said Proctor, plaintiffs often applied to him to get a copy of the same, or to see it, in order that the line might be correctly run and established between them, but he always refused and declined to let them have a copy of said contract, or to see it. The bill charges that the said Proctor is in the possession of land which is embraced in the tract conveyed to them as aforesaid, and outside of the tract sold to him by the said Kendall, and this was probably the reason why he has always refused to produce his title bond, and the fact, however, can only be ascertained by an inspection of said agreement and a survey of the land as conveyed to plaintiffs by said Kendall, and of the land contracted to be sold by him to the said Proctor. The bill then proceeds, " to the end, therefore, that the boundaries of the land of plaintiffs' may be clearly known, they pray that the said Mayberry Proctor may be made a party defendant to this bill and answer the same; that he be required to produce the said written agreement, and that a survey, to fix and establish the common line between the land of plaintiffs and the said Proctor, be made, and for such other and further relief as may be consistent with equity, &c.

The deed referred to in this bill appears in the record, and is dated the 13th day of August, 1853. The deed,

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., *et al.*

on its face, purports to be made by Joseph C. Kendall and Elizabeth, his wife, and grants and conveys to said George W. Hill and Rebecca Jane, his wife, "a tract of land lying partly in the county of Kanawha and partly in the county of Nicholas, and on the waters of Blue creek, &c., and bounded as follows, to-wit: Beginning at a post corner to lots Nos. 1, 2, 3 and 4, on the waters of Falling Rock creek; thence running south 45° west 1,100 poles to the mouth branch, commonly called John's branch, above the equal forks of Blue creek, up the left fork of said creek; thence south 40° east 300 poles to beeches; thence south 70° east 280 poles to a beech and sugar tree; thence along a divisional line between a survey made for Jacob Skiles of forty thousand acres, and a survey made for John Barkley of fifty thousand acres, and with said line south 50° east 200 poles to a buckeye and beech; thence south 90 poles to a white oak and beech; thence south 20° east 100 poles to a pine and dogwood; thence ——40° east 100 poles to a white oak and pine on a point near the Pond Fork; thence north 25° east 100 poles to a post; thence south 22° east about 300 poles to the land claimed by Mayberry Proctor; thence with his abutals and calls about 600 poles to the divisional line dividing lots Nos. 4 and 6; thence with said line north 34° east 1,220 poles, crossing Blue creek and Nicholas county line to a post, corner to lots Nos. 3, 4, 5 and 6, thence with the divisional line between lots No. 3 and 4, dividing the lands of Ruffner and Kendall, north 57½° west 900 poles to the beginning, containing ten thousand acres, exclusive of the land claimed by Ali Belcher, Reace Elswick, Andrew Pritt, Wesley Estep and Edward Brown, and although the above named claimants, Belcher, Elswick, Pritt and Brown, hold lands within said bounds set forth, yet it is to be considered as no part of the ten thousand —— conveyed by these presents; but the intent of these presents is to convey the above named ten thousand acres of land, exclusive of the land of the above named claimants, be there more

·or less, to have and to hold the said tract or parcel of land, with all and singular the appurtenances thereunto belonging, or in anywise pertaining to them, the said George W. Hill and Rebecca Jane, his wife, their heirs and assigns, to and for the only proper use and behoof of them, the said George W. Hill and Rebecca Jane, his wife, their heirs and assigns forever, and the said Joseph C. Kendall and Elizabeth, his wife, for themselves, their heirs, executors and administrators, doth hereby covenant and agree to and with the said George W. Hill and Rebecca Jane, his wife, their heirs and assigns, that they, the said Joseph C. Kendall and Elizabeth, his wife, and their heirs, the said tract or parcel of land, with its appurtenances, unto the said George W. Hill and Rebecca Jane, his wife, their heirs and assigns, against them, the said Joseph C. Kendall and Elizabeth, his wife, heirs and assigns, shall and will warrant and forever defend by these presents, but no other person whatsoever."

This deed purports to be signed and sealed by Joseph C. Kendall and Elizabeth A. Kendall. It appears to have been duly acknowledged by said Joseph C. Kendall and recorded in the clerk's office of the county court of Kanawha on the 4th day of October, 1853. The consideration of the deed as stated therein is $900, and "for other considerations." It further appears in this case that on the 19th day of July, 1872, the court made this entry upon the record: "Defendant, by counsel, filed exceptions to depositions of complainant filed in the cause, and the same having been duly considered the court is of opinion to sustain the exception to the depositions of Wesley Esteppe, Ernest A. Kendall and George W. Hill, dated March 15 and 16, 1872, which exceptions are made for want of proper notice; and to the deposition of George W. Hill, taken July 3, 1872, because filed in term time; and the court is further of opinion to overrule the other exceptions. And the defendant, by counsel, tendered his answer in the above cause, which is hereby ordered to be filed. And there-

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

upon defendant waived the exceptions to the depositions as sustained by the court, and the cause is continued."

Proctor, in his answer, says that he neither admits or denies the allegations of the bill as to what land the complainant claims farther than hereafter set forth.

"Respondent has a title bond from Joseph C. Kendall, deceased, for a large boundary of land on Blue creek; he is, and has been, anxious to get a deed for his land, and has no objection to exhibit the title bond, but, on the contrary, has instituted suit to get a deed, and has filed said bond as an exhibit with his bill. Respondent denies that he has possession of any land which belongs to Hill and wife, or any which is not properly included in his title bond. Respondent is anxious to secure a deed, and makes his bill filed against Kendall and others a part of his answer in this cause. And having thus answered, prays to be hence dismissed with costs, &c."

Surveyor Mathews made his report in the cause as follows:

"*To the Hon. James W. Hoge, Judge of the circuit court for Kanawha county*:

" Your surveyor respectfully reports that on the 25th day of May, 1871, I went to a white oak near the mouth of the Pond Fork of Blue creek, after giving notice to both parties; said white oak is claimed by both parties as a corner to lot No. 4 of the Barclay tract. I then adjourned the survey until Monday, 29th day of May, 1871, on which day I proceeded to survey at the instance of George W. Hill; present, Mayberry Proctor, Rease A. Pritt and Chapman Johnson. And with Pritt and Johnson as my chainmen, I ran with the calls of a deed from Kendall to Hill from a white oak, near the mouth of the Pond Fork of Blue creek, at A on the plat; thence north 25° east 100 poles to B (stake called for); thence south 22° east 300 poles to C (this calls to be about 300 poles to the lands claimed by Mayberry Proctor); thence north 75½° east 160 poles to Blue creek,

just below Mayberry Proctor's house, and protracted the line through to the division line between Hill and Ruffner at D. I then began on the upper line of lot No. 4 at T, and ran down the creek and ran out the improved lands claimed by Proctor; the lots colored red are the old improvements, and the lots colored green is the land cleared by Proctor. I then began at the mouth of a hollow and branch at M, claimed by Proctor as the hollow mentioned in his title bond from Kendall, and pointed out to me by Page Stanley as the place shown him by J. C. Kendall for Proctor's lower line. I then ran up the branch with its meanders to N; thence up a point near the head of branch, north $75\frac{1}{2}°$ east 90 poles to O. I then protracted the line — same course to the upper line of No. 4 at P. I then protracted the line from L to M, and adjourned the survey.

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et al.

The lines A, B, C, D, F, G, H, I, J, K and A, represent the land claimed by Hill.

The lines L, M, N, O, P, Q, R, S and L, represent the land claimed by Proctor.

THOS. J. MATTHEWS,
*Special Surveyor.*"

At the instance of G. W. Hill, I went to the land on the —— day of March, 1872; present, Mayberry Proctor and G. W. Hill. Neither party wanted any further surveying done, and at the instance of G. W. Hill I make a supplementary report. In the above report I reported that Hill claimed the yellow line from C to D as his line, but have found since that I was mistaken, and that instead of said line he claims the red line from C to figures 1, 2, 3, 4 and 5, running with the meanders of the creek bottom with the improvements of Branham and Oxier; figure 1 is at the mouth of a small hollow, it being the first hollow below the improvements of Oxier, at Proctor's mill, 36 poles below the Simon Oxier improvement, as shown me by Mayberry Proctor; the Branham improvement is at or near the upper end of the tract, and is shaded red and marked 6, and the Oxier

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

improvement is shaded red and marked 7; the lines shaded blue is the land claimed by Proctor, and contains about 1,500 acres.

THOS. J. MATTHEWS,
*Special Surveyor."*

At a circuit court held for Kanawha county aforesaid, on the 21st day of June, 1873:

"Mayberry Proctor *v.* George W. Hill and wife and others; and George W. Hill and wife *v.* Mayberry Proctor—In Chancery.

"These causes came on to be heard together, this 20th day of June, 1873, upon the proceedings heretofore had in the cause, the plat and report of Surveyor Thomas J. Mathews, made under the order of the court in the case of Hill *v.* Proctor, and duly filed in the cause June 27th, 1872, upon the depositions filed, and was argued by counsel. And the court, after mature consideration, is of opinion that the blue line L, M, N, O, P, on the plat of survey of Thomas J. Mathews filed as aforesaid, is the true line of division between the lands of the said Mayberry Proctor and George W. Hill and wife; and that a true construction of the terms and meaning of the title bond executed by Joseph C. Kendall in his lifetime to Mayberry Proctor,, *conveying* all the lands in the blue lines in said plat, namely: the land in the lines L, M, N, O, P, D, T, O, R, S, L, to said Mayberry Proctor. And the court doth, therefore, order that the defendants, Betsy Kendall, James E. Kendall, George W. Hill and Rebecca Kendall, his wife, Biddy Ann Woody, heirs of Joseph E. Kendall, do make, execute and acknowledge, &c., for record a good and sufficient deed to said Mayberry Proctor, conveying the land aforesaid according to the construction of the court, as herein declared, and unless such deed shall be executed within ten days from the rising of this court, that Isaac N. Smith, who is hereby appointed a special commissioner for that purpose, shall make, execute and acknowledge such deed for the heirs of Joseph C. Kendall, for which the said

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., *et al.*

commissioner shall be allowed the sum of $5.00, to be taxed in the costs of the suit of Mayberry Proctor *v.* George W. Hill. For the better understanding of the deed thus to be made, the said commissioner shall file therewith as a part thereof, one of the plats of said Mathews now in the case. And the court doth further order that the said Mayberry Proctor recover his costs against the heirs of Joseph C. Kendall, defendants, in the case last named, together with $30.00 attorney fee, as allowed by law; and that he recover his costs against George W. Hill and wife, in the case of George W. Hill and wife against Mayberry Proctor, with $30.00 attorney's fee, as allowed by law, and the said Mayberry Proctor shall hold the land hereby allowed to him free from all claims of George W. Hill and wife, and shall be put in possession thereof to the extent of the boundary and up to the blue line L, M, N, O, P, and the said George W. Hill shall hold such other portion of Lot No. 4 of the Barclay survey of 50,000 acres as his deed from Joseph C. Kendall doth convey to him, free from the claims of the said Proctor.

In the case of Proctor against Hill and others, the plaintiff fails to state or aver the boundaries, or quantity of land, embraced by his said contract of purchase from Joseph C. Kendall, further than the boundary is stated in the contract. The boundary of the land is so vaguely stated in the contract that it is almost, if not quite, impossible to ascertain them, except by survey made under the direction of a court of equity. In fact, the description of the land sold and purchased in the bill and contract mentioned, is so vague that it is very difficult to identify either the quantity or boundaries thereof; and I am not entirely sure in my own mind that it can be done by survey under the direction of the court, according to the true purpose and intent of the parties to the contract at the time the contract was made, even with the aid of extrinsic oral and written evidence. But, for the fact that all parties admit that there was a

sale, and it is shown, perhaps *prima facie*, that Proctor paid all the purchase money to Kendall, deceased, and was put in actual possession of a part of it, and has made large, valuable and lasting improvements thereon, and has continued in such actual possession for perhaps over twenty-eight years prior to the institution of this suit, and the defendants in the suit seem desirous that the contract should be executed, I should hesitate very much as to the propriety of attempting to execute the said contract. From what I see from the whole record, I mean the oral and written evidence in the cause, bearing upon the question of the boundary of the land sold and purchased, it is perhaps possible to identify the land with reasonable certainty. It is not possible for Hill and wife to ascertain or determine the boundary of their tract on the side next to the Proctor purchase until the lines of Proctor on that side are first ascertained and determined, as may be seen by reference to the said contract and the boundaries described in the deed from Kendall to Hill and wife.

As the case now stands, and in the absence of other evidence, it is quite clear that the Betsy Kendall, who is made a party to the bill, was intended to be the widow of said Kendall, deceased, and not an heir. But the decree requires said Betsy Kendall to convey said land, as well as the other defendants to the Proctor bill. The decree also fails to make any reservations of the minerals in the land, which are specially excepted from the sale by the contract. The administrator of Joseph C. Kendall, deceased, was never made a party in either of the causes. It does not appear that any replication was ever filed to the answer of Proctor filed in the case of Hill and wife against him, but it does appear that Proctor took depositions in the cause as if there had been a replication.

Nothing other than I have stated appears in the cause as to the said answer of Hill and wife to the bill of Proctor. Nor does it appear that any action was ever

Lot No. 4 *of the*
*Barclay Survey*
*of 50,000 acres.*

taken as to the answer tendered to same bill, on the 8th. of November, 1872, which plaintiff took time to consider. It does not appear by the record, satisfactorily, that either of the causes were ever heard upon any answer. It does not appear that plaintiff ever took or filed any exceptions to said answer of 8th of November, 1872. The plat returned by surveyor Mathews, with his report, is as follows: (See plat.)

The plat examined in connection with the report of the commissioner, and the said contract of sale to Proctor, and the deed from Joseph C. Kendall to said Hill and wife, shows where the confusion of boundaries and the controversy and difficulty in the cause exists, though not so clearly as should be, because in some important particulars the surveyor has failed to state course and distance, either in his report or upon the plat. Hill and wife, in their petition to this Court for an appeal from the said decree of the 21st day of June, 1873, "state that they are aggrieved by a decree of the circuit court of Kanawha, pronounced on the 21st day of June, 1873, in the case of your petitioners against Mayberry Proctor, heard and determined with the case of said Proctor against your petitioners and others." And at the conclusion of the petition they further say: "Therefore your petitioners pray that an appeal be allowed to them from the said decree of the circuit court of Kanawha, rendered on the 21st day of June, 1873." This court granted the said Hill and wife an appeal from said decree of the 21st day of June, 1873, as prayed in said petition, as appears by the order granting the appeal. The parties to each of said causes in the court below are all before this Court upon this appeal. Those who have not been summoned, have appeared in this Court by counsel. The appellee, Proctor moved this Court to dismiss this appeal, upon the alleged ground that it is only taken from said decree in the case of Hill and wife, when it should have been taken, if at all, in both cases; that the appeal, as taken, does not extend to the case of

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., *et al.*

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et al.

Proctor v. Hill and others. Before proceeding to consider other points or questions involved in the cause, it is proper to first dispose of the motion to dismiss. All the parties to the case of Proctor v. Hill and others, as before stated, are before this Court in this appeal from said decree, either by summons or voluntary appearance by counsel, and all the parties to said cause of Proctor v. Hill et al. except Proctor, have asked the Court, by their counsel, to hear and determine this appeal as to the whole of said decree in both of said causes. As has been stated, Hill and wife are plaintiffs in one cause, and defendants, with others, in the other cause, and Proctor is plaintiff in one cause, and defendant in the other. Hill and wife, as purchasers in the one cause, are interested in the fixing and determination of the boundaries of the Proctor purchase, to a large extent, and in the other are interested in the right of the wife as a legal heir of Joseph C. Kendall, in the fixing and determination of such of the boundaries of the Proctor purchase as they are not interested in as purchasers from said Kendall, deceased. The material provisions and adjudications contained in the said decree of June 21, 1873, apply to a great extent to each of the causes, and as well to one as the other, and I can't very well see how the said decree could consistently be affirmed or reversed upon the merits as to one cause without so doing as to the other. This is because of the relation of the causes to each other, the identity of the questions involved, the hearing of the causes together, and the entering of the one decree, which in many material particulars, except as to costs, adjudicates the same questions in one case as the other. If the decree had been entered in a different form, perhaps, an appeal might have been from so much of the decree as applied to one case alone in all material respects. As these causes were heard together, and final decrees sought in each by the parties, on account of their peculiar relation and the form and nature of said decree, if there be any construction of the pleadings, or other-

wise which will enable this Court to consider and pass upon said decree so far as it applies to both of said causes upon this appeal, such construction should be given. In the cases of *Anderson et al. v. De Soer* and *same v. Gallego's admr. et al.*, 6th Gratt., 363, "Two suits, one of which is a foreign attachment, in the same court, by different plaintiffs, but against the same defendant, claiming to subject the same fund, proceed together, and were heard together, and the Court makes a decree in each case, giving to each plaintiff a portion of the fund. One of the plaintiffs, who claims the whole fund, takes an appeal from the decree. Held : The appeal brings up both cases, though the appellant was not a party in the other case, which was the attachment case ; and the appellate court may reverse the decree in the second case. See also *Kyle, exor., v. Kyle,* 1 Gratt., 526, and particularly the opinion of Stanard, Judge, who delivered the opinion of the Court. The appeal in the case at bar is from the decree of the 21st of June, 1873, not from a part of the decree, but the whole of it. By force of the authorities above cited, and under the peculiar circumstances which exist, I am of opinion that the appeal granted in this case brings up both cases, all the parties being before this court, and in fact each and all of them having appeared before it, by counsel, and this Court may on this appeal reverse or affirm said decree as to both causes. No question has been made before us as to the jurisdiction of a court of equity over the matters involved in the case of Hill and wife *v.* Proctor, by the counsel of Proctor. The jurisdiction was not called in question by his counsel in the argument. Regarding the jurisdiction of the Court as being conceded by the able counsel who appeared before us, I have not examined the question of jurisdiction as elaborately as I should have done if the jurisdiction had been questioned. Still I have given the subject very considerable examination and consideration. In this case Proctor and Hill and wife claim under a common vendor. Proctor

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et al.

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

claims under a contract of purchase, and by virtue of such purchase has an equitable title to the land so pur-chased. There is great confusion as to the true bound-aries of Proctor's purchase, arising out of the vagueness of the contract of purchase as to boundary. It does not appear that Proctor and Kendall, deceased, caused a sur-vey to be made of the boundary of Proctor's purchase, at the date of said contract or at any time afterwards, or that Proctor had ever made known where he claimed his boundaries to be. In fact he does not even venture to state his claim in his bill as to quantity, or boundaries, with any more certainty than the contract itself. So far as appears by the record before us, it does not appear that Proctor, at any time before the surveyor made his survey in this cause, ever made known the boundary claimed by him, further than by his acts of clearing and improving and occupying a part of the land as now claimed by him, and as run and laid down on the said plat by the surveyor. It is true that one call in the deed from Joseph C. Kendall to Hill and wife calls for running south 22° east about 300 poles to the land claimed by Proctor; and thence with his abutals and calls about 600 poles to the divisional line, dividing lots No. 4 and 6. Now this does not fix the location of the boundaries of the land purchased by Proctor with cer-tainty. And if it did it could only fix the locality of the line, for the deed then says, thence with his abutals and calls about 600 poles, &c. The said abutals and calls nowhere appear, unless they can be decided from the said contract and competent extrinsic evidence. It was evidently the intention of Kendall, deceased, that the land conveyed to Hill and wife should run to the land of Proctor, and thence with his proper lines to said divisional line dividing lots 4 and 6 (which is the line F Q on said plat), wherever Proctor's said lines under his purchase were or ought to be. It is, I think, mani-fest that said call south 22° east about 300 poles to the land claimed by Proctor, was not run before or at the

time of making said deed. The language employed in the deed, in the absence of other evidence, I think establishes this fact. The boundary which Proctor now claims as being embraced by his contract of purchase includes therein 1,500 acres, and comparatively speaking but a small part of it has been cleared or improved by Proctor. The existence of a controverted boundary by no means constitutes a sufficient ground for the interposition of courts of equity, to ascertain and fix that boundary. It is necessary to maintain such a bill that some peculiar equity should be superinduced. There must be some equitable ground attaching itself to the controversy. What is such equitable ground? In the first place, if the confusion of boundaries has been occasioned by fraud, that alone will constitute a sufficient ground for the interference of the court. And if the fraud is established, the court will, by commission, ascertain the boundaries, if practicable ; and if not practicable, will do justice between the parties, by assigning reasonable boundaries, or setting out lands of equal value. In the next place, it will be a sufficient ground for the exercise of jurisdiction, that there is a relation between the parties, which makes it the duty of one of them to preserve the boundaries; and that by his negligence, or misconduct, the confusion of boundaries has arisen. A bill in equity will lie to ascertain and fix boundaries, says Mr. Story in his Equity Jurisprudence, § 621, where it will prevent a multiplicity of suits. Story, Eq. Jur., § 619, 620, 621, 615. The same author in § 99a says : "Courts of equity will also interfere and grant relief where there has been, by accident, a confusion of boundaries between two" estates. See *Lange v. Jones*, 5th Leigh. 192, upon the subject of jurisdiction. Upon the whole it seems to me as at present advised, that the record in the case of Hill and wife *v.* Proctor discloses sufficient ground to give a court of equity jurisdiction of the cause, though I think there are but few cases in which such jurisdiction should be

1877.
January Term.

Hill and ux.,
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

exercised by courts of equity. It cannot be said that the decree appealed from is a decree on a bill taken for confessed as to the case of Proctor *v.* Hill *et al.*, for, as before stated, the defendants appeared to the cause, and tendered their answer, which is a part of the record in the cause. It appears, by the record, that on the 19th day of July, 1872, Proctor, by his counsel, waived the exceptions to depositions as sustained by the court. But even though this were not so, the rule seems to be that "an exception to a deposition, whether endorsed on it, or taken and entered on its face in the process of taking it, or written on a separate paper and filed in the cause (except upon the ground of incompetency, in which case no exception is necessary), not having been brought to the notice of the court below or passed upon by that court, ought to be considered as having been waived, and cannot be noticed by the appellate court; and a general judgment or decree of the court below against the party making the exception, cannot be considered as involving a decision upon the exception." *Faut v. Miller and Mayhew*, 17 Gratt. 187. The personal representative of Joseph C. Kendall, deceased, is a necessary party to the cause of Proctor *v.* Hill and others. *Nichols v. Heirs of Nichols*, 8 W. Va. All persons materially interested in the subject of controversy ought to be made parties in equity, and if they are not, the defect may be taken advantage of either by demurrer or by the court at the hearing. *Clark v. Long*, 4 Rand. 451. If it appear on the face of the record that proper parties are wanting, the decree will be reversed, unless the objection was expressly waived in the court below. *Shepperd's exor. v. Stark et ux.*, 3 Munf. 29. If the plaintiff has shown a right to relief against the defendants before the court, his bill ought not to be dismissed, because the proper relief cannot be extended to him, in consequence of his omission to make other necessary parties. But in such case the appellate court will send the case back that proper parties may be made. 3 Gratt. 4. From what

appears in the record there is much reason to believe
that Joseph C. Kendall, deceased, made a will devising
minerals, lands, &c., to persons not made parties to the
bill of Proctor v. Hill and wife, who have an interest
in the execution of Proctor's said contract of purchase,
and they should have been made parties to the bill, as
it now seems to me. Proctor, in his bill, alleges that
Joseph C. Kendall agreed to convey to him a certain
tract of land, situated in Kanawha county, on the waters
of Blue creek, to-wit; on the Big Fork of Blue creek,
*from the first hollow below the improvement where Simon
Oxier lived, crossing the creek at right angles, &c.* In the
contract of purchase, Joseph C. Kendall bound himself
to make to Proctor all his right, title and interest to a
certain piece of land, lying on the Big Fork of Blue
creek, *from the first hollow below the improvement where
Simon Oxier lived,* crossing the creek at right angles, so
as to include both improvements where Childers Bran-
ham tends, &c. The bill of Proctor is for the specific
performance of said contract. The mouth of the first
hollow called for is a natural land mark, and it is the
only corner clearly designated in the contract. It is the
beginning corner of the land sold, and so expressly made
by the contract. Proctor's bill prays for the specific
execution of this contract, and according to its terms ;
and he claims in and by his bill, that the line of his
purchase, according to his contract, should run *from the
first hollow below the improvement where Simon Oxier lived,
crossing the creek at right angles, &c.,* and he prays the
Court to compel the defendants, as the legal heirs of said
Kendall, deceased, to convey to him the land accord-
ingly. He does not allege any mistake in the contract
in designating the first hollow, &c., and ask the Court to
reform the contract in this respect, or in any other
respect. But when the surveyor, in obedience to the
order of court, went to make the survey of the Proctor
purchase, he (Proctor) instead of having the surveyor
to run from the mouth of the first hollow below the im-

provement where Simon Oxier lived, crossing the creek, &c., took the surveyor some thirty-six poles down the creek, below said first hollow, which is laid down on the plat, to the mouth of Cabbage branch (also laid down in said plat), and had his line run from that point, which would give him a large number of acres more than to run from the said first hollow. It appears that to run a line from the said first hollow, at right angles with the said creek, it would not interfere with said improvements mentioned in the contract, and would be entirely consistent with all other provisions of the contract. It is true, at the mouth of Cabbage branch there is a hollow, caused by the said branch, and in which said branch runs, but it is not the first hollow below said improvements. To allow Proctor to run from the mouth of Cabbage branch, instead of the said first hollow, which is a natural land-mark, would be to make a material change in the contract itself, and the contract, as stated in the bill, when no mistake is alleged in the bill, and to give Proctor greatly more land than he claims in his bill. He has attempted to prove, by two witnesses, that Joseph C. Kendall, some years after the contract was made, and perhaps after the date of his deed to Hill and wife, stated that the line of the land he sold to Proctor crossed said creek at the mouth of said Cabbage branch, and runs up said branch. I don't think the evidence of these witnesses as to verbal statements of Kendall, deceased, made several years after the written contract was made, and when the contract was not present, should prevail against the express call for said hollow below, &c., contained in the written contract, the same being a natural land-mark and doubtless familiar to the parties to the contract, at the time it was made, and especially under the allegations of plaintiff's bill. As the case stands, the line must be held to run from the mouth of the said first hollow below the improvement where Simon Oxier lived, crossing said creek at right angles. The mouth

of said first hollow is at figure 1 on said plat. After crossing the creek from the mouth of said first hollow, at right angles to the creek, as near as may be, Proctor's line, I think, should be extended straight to letter C on the said plat, and from letter C his line should run to Spangler fork, at the out edge of Proctor's improvement, as laid down on said plat, and from thence in a straight line to the out line F Q at T, at the out edge of Proctor's improvement at that point, and from thence with said last named line, in the direction of letter P, on said plat, so far, and so far only, as that a straight line run therefrom to the mouth of said first hollow, the beginning corner will just include all the improvements of the said Proctor farthest to the right of the line running from D to C, before it crosses said creek, as laid down in said plat of surveyor Mathews; and from such last named point on the said line, Proctor's closing line should run to the mouth of said first hollow. And the lines of Hill and wife, on that side of the tract conveyed to them by said Joseph C. Kendall, shall run with the lines of said Proctor, as above ascertained, from the point at letter C, on said plat, to the mouth of said first hollow at figure 1, on said plat, and from thence with said Proctor's said last named straight line, to the said line running from letter T to letter P, on said plat.

The boundary of the Proctor purchase from said Joseph C. Kendall, above ascertained, is materially different from the boundary thereof as ascertained by the circuit court in its said decree of the 21st of June, 1873. The circuit court, by its decree, ascertained the land embraced by Proctor's said contract of purchase to include the lands within the lines on said plat, namely: the land in the lines L, M, N, O, P, D, T, Q. R, S, L, and that the lines L, M, N, O, P, on the said plat of survey of surveyor Mathews, is the true division line between the lands of said Proctor and George W. Hill and wife. This decision of the said circuit court is erroneous, because variant from the true boundary of the said Proc-

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., *et
al.*

tor purchase and the true division line between the said Proctor purchase and the land conveyed to said Hill and wife, by said deed made to them by Joseph C. Kendall, as I have above ascertained the same.

The deposition of George W. Hill was taken by said Hill upon notice given by him, and filed in the said cause of said Hill and wife. This deposition details statements of the said Joseph C. Kendall, stated by the witness to have been made by said Kendall to the witness at the time of the said purchase by witness and his wife from said Kendall, which are materially prejudicial to the claim of Proctor as to the boundaries of his purchase, and materially favorable to the claim of the witness and his wife as to the location of the boundaries of the Proctor purchase and the location of the division line between their said land and the Proctor land. It is objected here by Proctor's counsel, that said Hill is not a competent witness to prove said statements of said Joseph C. Kendall; that to allow him to testify to such statements, would be to permit him to testify in favor of his wife. The common law rule seems to be that neither the husband or wife are admissible as a witness in a cause, civil or criminal, in which the other is a party. This rule is founded partly on the identity of their legal rights and interests, and partly on principles of public policy. The principle of this rule requires its application to all cases in which *the interests* of the other party are involved. Nor is there any difference in principle between the admissibility of the husband and that of the wife where the other is a party. And where the husband or wife is not a party to the record, but yet has an *interest directly involved* in the suit, and is, therefore, incompetent to testify, the other also is incompetent. 1st Greenleaf on Ev., § 334, 335, 336, 337, 341 and cases there cited in notes. It seems that as to whether the rule may be relaxed, so as to admit the wife to testify against the husband, by his consent, the authorities are not agreed. Lord Hardwick was of opinion that she

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., *et au.*

was not admissible, even with the husband's consent; and this opinion has been followed in this country, apparently upon the ground that the interest of the husband in preserving the confidence reposed in her is not the sole foundation of the rule, the public having also an interest in the preservation of domestic peace, which might be disturbed by her testimony, notwithstanding his consent, and the great temptation to perjury is not to be overlooked. But Lord Chief Justice Best, in a case before him, said he would receive the evidence of the wife if her husband consented. 1st Greenleaf on Ev., § 340, and notes. It seems that under the common law rule, as I have stated it, to which there may be some exceptions, not necessary now to consider or determine, the depositions of said Hill should not be read as evidence for the purpose stated. But it is claimed that said depositions may be read under the provisions of the twenty-second and twenty-third sections of chapter one hundred and thirty of the code of 1868. The said sections provide as follows:

"22. No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event thereof.

"23. A party to a civil action, suit or proceeding may be examined as a witness in his own behalf, or in behalf of any other party, in the same manner and subject to the same rules of examination as any other witness, except as follows," and the fifth exception enumerated in the statute is as follows:

"V. A husband shall not be examined for or against his wife, nor a wife for or against her husband; except in an action or suit between husband and wife." It seems to me, taking these sections, with said exception, together and so considering them that the intent of the Legislature by said sections was to make no material alteration (now occurring to me) in the common law upon the subject of husband or wife giving evidence for or against each other, except in an action or suit between

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et
al.
husband and wife. I do not think, therefore, that the deposition of said George W. Hill is admissible as evidence either under the common law or said twenty-second or twenty-third sections of chapter one hundred and thirty of the code of 1868. It may be that in some cases brought by husband and wife for certain causes of action, the wife, where she is the meritorious cause of action, may be admitted to give evidence. But I do not pretend to decide that question, as it does not arise in this case, and I have not fully considered it.

George W. Hill and wife, in the said cause against Proctor, have filed the depositions of witnesses, proving statements of said Joseph C. Kendall as to the boundaries of the Proctor purchase, made after the date of the deed of conveyance from said Kendall to Hill and wife, which are not inconsistent with the said contract or any part of it. Proctor, by his counsel, objects here that such depositions are not competent and proper on behalf of said Hill and wife, because made after the said contract of sale and because said Kendall was interested. In the case of *Harriman v. Brown*, 8th Leigh. 697, the court of appeals of Virginia held that "evidence is admissible to prove declarations as to the identity of a particular corner tree, or boundary, made by a person who is dead, and had peculiar means of knowing the fact, as, for instance, the surveyor or chain-carrier upon the original survey, or the owner of the tract, or of an adjoining tract calling for the same boundary, and also tenants, processioners and others, whose duty or interest would lead them to diligent enquiry and accurate information as to the fact, always excluding those declarations which are liable to the suspicion of bias from interest." This seems to be good law, and I am not aware that it has been departed from in Virginia or in this State. As I think it is clear from the face of the said Proctor contract that said Joseph C. Kendall did not sell to Proctor all his land embraced within the boundary described by the lines L, M, N, O, P, D, R, S, L, not

1877.
January Term.

Hill and ux.
v.
Proctor.

Proctor
v.
Hill and ux., et
al.

covered by the said deed to Hill and wife, so far as is disclosed in the record before us, he was the owner of the land lying within the lines A, L, S, R, Q, down to T, on said plat, adjoining in part the land sold by him to Proctor, the boundaries of which I have hereinbefore ascertained, at the time he made the said sale to Proctor, and also when he made said deed to Hill and wife, and on until his death. Joseph C. Kendall was, therefore, interested in the location of the boundary of the said Proctor land at the time he made said statements, and his interest was clearly adverse to that of Proctor. Under these circumstances said statements of said Kendall at the time they were made, it seems to me, are obnoxious to the *suspicion of bias from interest,* and should not be read as evidence against Proctor. It was competent and proper for Proctor to prove the declarations of said Kendall, made at the time of his contract, and afterwards as to the identity of a particular boundary, or corner tree, of his said sale to Proctor, before the conveyance to said Hill and wife, and, as I now think, after such conveyance, because between Hill and wife and Proctor, after the conveyance to Hill and wife, he had, under the circumstances, no interest in said boundary adverse to Hill and wife.

The said decree of the 21st of June, 1874, is clearly erroneous for not excepting the minerals in the contract mentioned from the conveyance to Proctor. The widow of Joseph C. Kendall is not a necessary party to either of these causes, and no decree depriving her of dower in said land, without her consent expressly given, should have been rendered. As the case now stands, I think that *prima facie* the Betsy Kendall in the bill mentioned is the widow of said Joseph C. Kendall, deceased, and it seems probable from what is disclosed by the record that said Kendall, deceased, made a will by which he devised some of the land in controversy, or interests therein, to certain persons, and if that is so such devisees should also be made parties in the case of Proctor *v.*

1877.
January Term.

Hill and ux,
v.
Proctor.

Proctor
v.
Hill and ux., et
al.
Hill and wife.    But as the causes must be remanded to the circuit court for further proceedings, the facts in relation to this matter may be hereinafter ascertained and the proper action thereon had in the court below.    The said two causes now under consideration were properly heard together, and should be so heard hereafter if practicable.

For the foregoing reasons the decree rendered in the said causes of George W. Hill and Rebecca J., his wife, against Mayberry Proctor, and Mayberry Proctor against George W. Hill and wife and others, (which were heard together) on the 21st day of June, 1873, by the circuit court of Kanawha county, must be reversed, and the appellants (George W. Hill and Rebecca J., his wife,) recover against the appellee (Mayberry Proctor), their costs expended about the prosecution of their appeal in this Court. And this Court proceeding to render such decree as the said circuit court of Kanawha county ought to have rendered in the said causes, it is adjudged, ordered and decreed that the said causes be remanded to the said circuit court of the county of Kanawha, with directions to said court to permit the said Mayberry Proctor to file an amended bill in his said cause against George W. Hill and others, making new parties thereto. And for such further and other proceedings to be had in said circuit court as are in accordance with the rules and principles governing courts of equity.

The other Judges concurred.

DECREE REVERSED, and causes remanded.