CAMPBELL'S ADM'R *v.* WHITE, *trustee, et al.*

AND

JANNEY *et al. v.* CAMPBELL'S ADM'R.

*(Absent, GREEN, PRESIDENT.)

Decided November 16, 1878.

1878
Special Term.

1. A bill having been filed against an administrator to surcharge and falsify the *ex parte* settlement of his administration account; and an order of reference being made therein to a commissioner to take, state and settle said account, but said order remains unexecuted, and the suit was not further prosecuted until nearly nine years thereafter, when said administrator filed a bill to enjoin the sale of certain lands, and involved the same issues and connected it with the original suit by direct allegations of the institution, pendency and non-prosecution thereof, and prayed the settlement of said account before a commissioner under order of the court, and the plaintiffs in the original suit having answered as defendants the bill in the injunction suit, and thus presented anew for the consideration of the court the pretensions of the parties respectively. HELD:

That even had there been no answer by the administrator to the original bill, the filing of the injunction bill by him, under the circumstances, might serve the double purpose of an answer and cross-bill in the first suit, and justify the court in proceeding to consider and decide the cause upon its merits, and to recommit, or. refer the cause to a commissioner, to state fully the administration account, although the former order remain unexecuted.

2. The instruction given by the court to the commissioner, " that the settlement heretofore made before commissioner Stone,

*Was counsel in the case before he came on the Bench.

and approved by the county court of Jefferson county, is to be taken as correct, except so far as the same, or any of the items therein, shall be proven to be otherwise," is what the statute required, and was therefore proper,

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

3. So far as John H. Campbell's account as agent to his father, the intestate, was involved in the settlement of his account, as administrator, and was made a part of the *ex parte* settlement by commissioner Stone, the presumption of correctness should in like manner apply to it.

4. The case of *Reitz & Co.* v. *Bennett et al.*, 6 W. Va. 418, approved; and the principles, therein asserted as applicable to commissioner's reports, where no exceptions are filed thereto, are applicable to this case.

5. Where some of the items of the account are disputed, or objected to as improper to be allowed, and it is doubtful whether they should be allowed, or not, it is not improper for the commissioner to direct the attention of the court to them by alternate statements leading to different results, and thus leave the court to draw its own conclusions, as to which statement should be confirmed.

6. Vouchers, which cannot be produced on the new settlement, upon a bill to surcharge and falsify a former settlement, may be presumed to have existed; and in every such case the *onus probandi* is thrown on the adverse party; and this rule should be strictly adhered to, when there has been great lapse of time. 2 Matth. Dig. 184, note; *Burwell* v. *Anderson*, 3 Leigh 353.

7. The principles laid down in *Rose & Co. et al.* v. *Brown et ux.*, 11 W. Va. 122, and *Hill et ux.* v. *Proctor*, 10 W. Va. 59, as to a wife's testimony, approved, and applied to this case.

Appeal from a final decree of the circuit court of Jefferson county, rendered on the 30th day of December, 1871, in two causes heard together, in one of which Trueman W. Potterfield administrator of John W. Campbell, deceased, was plaintiff, and N. S. White, trustee and others were defendants, and in the other of which O. S. Janney and others were plaintiffs and John H. Campbell's administrator was defendant, and also from a decree entered in said causes on the 17th day of November, 1875, allowed on the petition of O. S. Janney and others.

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

Hon. E. B. Hall, late judge of the third judicial circuit, rendered the decree of December 30, 1871, and Hon. John Blair Hoge, at present judge of the said circuit, rendered the decree of November 17, 1875.

MOORE, JUDGE, furnishes the following statement of the case:

Thomas Campbell died in 1852, and his son John H. Campbell, qualified as administrator of his estate, and made an *ex parte* settlement of his accounts as such administrator before Samuel Stone, one of the commissioners of the county court of Jefferson county, in November, 1855; and on the 17th day of December, 1855, said report was submitted to said court and ordered to be recorded, and was recorded in Will Book No. 14.

Sometime thereafter, Josiah J. Janney and Orra S., his wife, James Wysong and Lucy S., his wife, Charles Anglionby, trustee of said Lucy S. Wysong, and Allen C. Hammond and Catharine, his wife, filed a bill, in the circuit court of Jefferson county, to surcharge and falsify said account.

Under the bill to surcharge and falsify, the circuit court, on January 15, 1858, taking the bill for confessed, heard the cause "upon the bill and exhibits," and the court "being of opinion, that in the absence of any proof the bill, so far as it charges fraud, is not to be regarded, but that the bill being taken for confessed, the plaintiff is entitled to an order of reference," decreed, that the cause be referred to a commissioner to settle fully the administration account of said John H. Campbell, and that in making said settlement, the settlement theretofore made by commissioner Stone "*is to be taken as correct*, except so far as the same, as to any of the items therein, shall be proven to be otherwise, in which case such errors are to be corrected by the commissioner. And the alleged indebtedness of John H. Campbell to the estate prior to the death of his father, the intestate, if any such exist, will be embraced by said commissioner, the same being

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

regarded by the court as necessarily involved in said settlement made by commissioner Stone, but the presumption in favor of the correctness of said account is in like manner to apply to it." And at the same time, "on motion of the defendants" leave was given them to file their answer in the cause, within sixty days from the rising of the court, subject to all proper exceptions.

On the 3d day of November, 1858, the cause was further heard, "upon the papers formerly read, and the report of commissioner Edward E. Cooke, with the depositions taken before him, showing that the defendant, John H. Campbell," refused to produce the vouchers, which were before commissioner Stone, when he made the *ex parte* settlement, and that commissioner Cooke refused to permit certain questions propounded by "complainant" to witnesses to be answered, and showing that said commissioner (Cooke) decided, that Campbell was not bound to produce a detailed statement of his agency account for the reasons stated in said report. The court adjudged Campbell "bound, on the requisition of the plaintiffs, to produce the vouchers," and that the questions should have been permitted to be answered, and that said Campbell was bound to produce a detailed statement of his agency account.

On the 30th day of May, 1859, the answer of John H. Campbell was filed by leave of the court; and the plaintiff replied generally. No further proceedings were had in this cause, except suggesting death of Janney; and the orders of the court therefore remained unexcepted to after the filing of said answer. The absence of said answer from the record is not accounted for. The whole matter seems to have been abandoned by the plaintiffs, but revived by said John H. Campbell himself filing a bill in said circuit court, August 4, 1867, against Wysong and wife, Hammond and wife, N. S. White, trustee, and Orra S. Janney (her husband being dead), praying an injunction against the selling of certain lands by said White as trustee for the benefit of Mrs. Wysong

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

and Mrs. Hammond under two deeds of trust executed by said John H. Campbell. In that bill, Campbell alleges his *ex parte* settlement of his administration accounts of November, 1855, and the filing of the bill to surcharge and falsify the same, also the pendency of the suit, though not prosecuted, and requests, that "the record and proceedings in that suit may be referred to and considered in the determination of this cause, as showing, among other things, a sufficient reason why a further settlement "of his administration account has not been long since and finally made before a commissioner," and his sale of a tract of land of over three hundred acres to Shoemaker, subject to certain incumbrances, which he supposed he had arranged with the holders of the incumbrances to have satisfied "out of the after payments to become due from Shoemaker." The holders of said incumbrances were his sisters, Mrs. Wysong under deed of trust of September 1, 1854, and Mrs Hammond under another deed of trust of September 1 1854, who failed to comply with said arrangement and caused the trustee, N. S. White, in those two deeds, to advertise not only the tract of land sold to Shoemaker, but also some forty-nine or fifty acres, originally embraced in one of the trust deeds, which he, Campbell, had afterwards sold and conveyed to Martin Swimley, and as to which the deed of trust has been released by the trustee at the instance and by the direction of the creditors, who actually received the money in part payment of the debt secured in the deed of trust. He alleges, that his father left a large real estate and considerable personal estate, encumbered however with a heavy amount of debt; that although it was well understood, that the debts "would largely exceed the personal assets other than the slaves left by the intestate, the slaves were 'divided among the distributees, under an arrangement entered into by all of them, that each should pay his or her respective portion of the debts over and above what the assets would cover;" that this

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v
Campbell's
adm'r.

agreement was reduced to writing and duly executed by each of the parties, but cannot "at present be found," but if not admitted, its contents can readily be proven; that in virtue of said agreement, he delivered over said slaves to the distributees accordingly; that upon general principles of law and by virtue of said agreement, the lands, which descended to the several heirs at law, became chargeable and still remain chargeable for the excess of debt of the estate, which the assets fell short of satisfying; that in this condition of things, the widow's dower was assigned her, and the real estate divided among the heirs at law; that he purchased from his sisters, Mrs. Wysong and Mrs. Hammond, the lands referred to as advertised for sale, and the balance of the purchase money remaining unpaid on said purchase constitutes the claim for which the lands are threatened to be sold; that by the settlement of his administration account of November, 1855, there was found due him the aggregate sum of $6,917.49, which with interest on $5,923.64, the principal sum, down to April 1, 1867, to which point the calculation has been brought, amounts to the aggregate sum of $10,975.18; that since said settlement was made, he has advanced in payment of the debts of the estate several thousand dollars more, without having in hand any assets to meet these debts; that each of the parties, for whose benefit the land is advertised to be sold, is bound to pay to him a proper proportion of the amount he has thus advanced in payment of the debts of the estate; that the debts were a charge upon the land, and that he stands in the shoes of the creditors, whose debts he has thus paid, and that it is unjust and inequitable to require payment from him of the purchase money of the very land chargeable with the payment of these debts, without crediting the amounts properly chargeable against each of the deed of trust creditors; that it is against equity to make sale under the trusts, " until the true and accurate amount so chargeable against each of said creditors shall have been ascer-

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

tained by a decree of a court of equity," or if they elect to abandon this suit, by the final settlement of your orator's administration account before a commissioner, which he is ready to make at any time, so soon as the obstructions thereon in his way by the chancery suit, before mentioned, shall have been removed;" that the dower interest of the widow of Thomas Campbell, which had been assigned to her, had since said widow's death been divided between himself and his sister Mrs. Janney, he being entitled to three-fourths and she to one-fourth, and that seventy-five acres of the two hundred and fifteen acres dower was assigned to Mrs. Janney, and the residue to to himself, "yet the advertisement proposes to sell an undivided proportion of this dower land to satisfy an undetermined amount of debts chargeable upon the lands." Injunction granted June 26, 1867.

At the April term, 1868, this injunction cause, was heard by the court upon the bill taken for confessed; and the cause was referred to a master commissioner to state and settle the administration account of complainant as administrator of Thomas Campbell, deceased; and he was ordered to "ascertain and report the amounts advanced by complainant for the discharge of the liabilities of said estate beyond the personal assets, that came into his hands, and whether the personalty has been fully administered, and if not, what amount available remains unadministered; that he ascertain the amount due to the defendants, respectively, on account of the trust claim in the bill named, if anything, charging the defendants with their proper proportion of any amounts found to have been advanced by complainant in discharge of liabilities of the estate beyond the personal assets administered;" and any other matter deemed pertinent by the commissioner, or required by any of the parties.

June 10, 1868, Hammond and wife and Wysong and wife filed their answer to said bill; and the complainant replied generally. The answer states, that having waited for thirteen years for the amount due them, and seeing

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

no prospect of payment otherwise than by sale of the land under the trust deed, they directed the trustee to advertise and proceed to make sale; that it was not the intention, that the trustee should sell the land sold Swimley, it having been released from the trust, but that the residue of the lands are justly liable to the debts due respondents; that they sold to plaintiff in 1854 their interest in their father's real estate embracing their interest in their mother's dower, for which plaintiff executed the deeds of trust; some small payments have been made, but that the amount due them at time of answer, principal and interest, was not far short of $16,000.00. They deny any arrangement that they should wait for the payment of the amount due them from the deferred payments due from Shoemaker; that it is true plaintiff enquired of them if they would take Shoemaker's bonds in substitution of his indebtedness, to which they replied, it would be quite agreeable to them to take Mr. Shoemaker's bonds," but no such bonds have ever been tendered them in discharge of plaintiff's debts to them; they deny that Thomas Campbell's estate is indebted to plaintiff in the amount set forth in the bill; they are satisfied, that a proper settlement of the accounts of that estate will show the assets, including the proceeds of the land while under the control of the plaintiff, will fully discharge all the just debts left by their father; that it is true plaintiff succeeded in having a settlement recorded, in which the balance is found in his favor, set forth in the bill, and that they filed a bill to surcharge and falsify said accounts, which proceeding is still pending, but that the papers of said suit have mysteriously disappeared within the last two years; they deny that the purchase money due them from plaintiff is liable to any just offsets growing out of payments made by plaintiff of the debts of Thomas Campbell over [and beyond the assets, which have, or should have, come to his hands; they admit the partition, amongst the widow and distributees, of the slaves, and no doubt there was a writing evidenc-

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

ing it; but they deny that it was designed to bear the construction the plaintiff seeks to give it.

September 17, 1869, the two causes were heard together, and the injunction cause being heard on the report of commisssoner Fayman filed July 26, 1869, with the exceptions to said report, the cause was recommitted to said commissioner; and the cause to surcharge and falsify being heard upon the bill filed by the distributees, and upon the orders of January 15, 1858, and November 3, 1858, was also recommitted and referred to commissioner Fayman "to state fully the administration account of John H. Campbell, as administrator of Thomas Campbell, deceased, in making which settlement however the settlement, heretofore made before commissioner Stone as approved by the county court of Jefferson county, is to be taken as correct, so far as the same, or any of the items therein, shall not be proven to be otherwise, in which case such errors are to be corrected by the commissioner. And the alleged indebtedness of John H. Campbell to the estate, prior to the death of his father, the intestate, if any such exists, will be embraced by said commissioner, the same being regarded by the court as necessarily involved in said settlement made by commissioner Stone, but the presumption in favor of the correctness of said account is in like manner to apply to it." It was further ordered that John H. Campbell should, upon the requisition of the parties interested, produce the vouchers, which were before commissioner Stone, when he made the said ex parte settlement; and said John H. Campbell was further required to produce a detailed statement of his account as the agent of his father and of his transactions as his agent.

To the requisition Campbell answered under oath, that all the said vouchers "were destroyed by a fire, which, on the night of July 27, 1869, destroyed his residence in Charlestown." And in answer to the requisition to produce a detailed statement of his account as agent of his father, and of his transactions as his agent

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v
Campbell's
adm'r.

states," "that he is unable to make any such detailed statement, or give any item of such statement, except that on the 1st day of January, 1846, his father, Thomas Campbell, executed and delivered to him, the said John H. Campbell, his bond, for $1,000.00, payable on demand, in consideration of the services theretofore rendered by said John H. Campbell to his said father, no part of which bond was ever paid or settled in any manner," * * * * * " he never kept such a statement, and was never required or requested by his father so to do ; that during the continuance of his said agency his father was greatly indebted, and that all the crops and funds, or other property of his father, which passed through his hands, were applied to the payment of the debts of his father and the support of his family, and were utterly insufficient to meet these demands, and the said John H. Campbell, in very many cases, executed his individual bonds, or notes, to meet the demands made on him to support his father's family and pay his debts ; and while unable to render any detailed statement, he is satisfied that his father was in his debt the full amount allowed him by said commissioner Stone in his said report."

At the April term, 1870, the death of John H. Campbell was suggested, and an order was made, on the 20th day of September, 1871, by consent of Truman W. Potterfield administrator of said John H. Campbell, reviving each of said causes, to be proceeded in, for and against him, respectively, in his name, which was entered *nunc pro tunc* at the December term, 1871. In September, 1871, commissioner Fayman made his report, in which he so far corrected his former report as to reject the $1,000.-00, bond and interest, claimed by John H. Campbell as due him from his father; and on said September 20, 1871, the case was again recommited to commissioner Fayman, the said report having been excepted to by both plaintiff and defendants, and the defendants having filed an affidavit tending to establish the fact, that the vouchers of

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

John H. Campbell, alleged to have been destroyed by fire, may yet be accessible in the 'settlement of his account as administrator; "and the commissioner was instructed, by said order, to summon said John H. Campbell's administrator before him, and otherwise ascertain if said vouchers were in existence and accessible; and that he proceed to revise and correct his former report by any proper and legal evidence that might be produced before him." The commissioner returned his report under this order, November 24, 1871, in which he states, among other. things, that he has revised and corrected his former report, "so as to show a balance of $1,081.96½ principal, and $986.72 interest, due from each of the heirs on account of the indebtedness of their father's estate," also showing John H. Campbell indebted to Mrs. Wysong $7,490.30, and to Mrs. Hammond $6,980.30; also showing Mrs. Janney indebted to John H. Campbell $2,068.68¾. The commissioner makes an alternate statement, provided the seven years and seven months services are allowed John H. Campbell, viz: said Campbell indebted to Mrs. Wysong $6,310.14½, and if the $1,000.00 bond is allowed Campbell, he will owe Mrs. Wysong in the sum of $5,782.-64 with interest on $3,833.33 from July 1, 1871; and to Mrs. Hammond $5,800.14, and if the $1,000.00 bond is allowed him, he will owe her $5,272.64, with interest on $3,833.33 from July 1, 1871, and Mrs. Janney would owe him $3,776.34½. And if the Fry debt of $3,437.81 be disallowed, said Campbell will owe Mrs. Wysong $9,246.59, with interest on 3,833.33 from July 1, 1871; include her share of services he will owe her $8,066.03; include her share of the $1,000.00 bond the amount will be $7,538.93, with interest on the principal $3,833.33 from July 1, 1871; and to Mrs. Hammond $8,736.59; include services, $7,556.33; include the $1,000.00 bond, $7,028.83. And Mrs. Janney would owe him $312.39; if services allowed, $1,492.55; and if the services and $1,000.00 bond be allowed, she would owe him $2,020.05.

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

The vouchers were not found. No exceptions were filed to the report.

On the 30th day of December, 1871, the two causes were heard "upon the decrees had and rendered therein, the proceedings and papers formerly read to the court and the report of master commissioner J. D. Fayman, duly filed on the 24th day of November, 1871," and the court adjudicated that the administrator of John H. Campbell, deceased, was entitled to a credit of the $1,000.00 bond, also to the allowance of the $300.00, per annum for the said services of said John H. Campbell; also to a credit of $3,437.81, the amount of the Fry debt, and to all other credits allowed by commissioner Stone, with interest thereon, as stated also in commissioner Fayman's report; and the court was of opinion, that none of the items contained in the *ex parte* settlement made by commissioner Stone had been successfully surcharged and falsified; and that said administrator was entitled to recover the costs expended by said Campbell in both suits; confirmed commissioner Fayman's report allowing said credits, and wherein it shows a balance due Mrs. Wysong from John H. Campbell of $5,782.64, with interest thereon from July 1, 1871, till paid, and a balance due Mrs. Hammond from said John H. Campbell of $5,272.64, with interest thereon from July 1, 1871, till paid, and also wherein it shows a balance due John H. Campbell from O. S. Janney of $3,776.34, with interest on $1,985.53, a part thereof, from July 1, 1871, till paid, said report was confirmed. The court therefore adjudged, ordered and decreed, that Potterfield as administrator of said Campbell, out of the assets in his hands to be administered, do pay to James Wysong and Lucy S. his wife, said sum of $5,783.64, with interest from July 1, 1871, till paid, less one-third the costs incurred by said Campbell and his administrator in these suits, to be taxed, &c.; and to Allen C. Hammond and Catherine H. his wife, the sum of $5,273.64, with interest from July 1, 1871, less one-third the costs incurred

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

by said Campbell and his administrator in these two suits, to be taxed," &c,; and that Potterfield as administrator of Campbell recover against O. S. Janney the sum of $3,776.34, with interest on $1,985.53, a part thereof, from July 1, 1871, till paid, and one-third the costs of these suits incurred by Campbell and his administrator. The court was further of opinion, that the injunction "was properly awarded, and should not be dissolved, but that the court should retain the causes and execute the trusts in the bill and proceedings named under its direction, when the proper parties for that purpose are before the court," and Shoemaker's petition having been presented, he claiming to be owner of part of the land covered by the deeds of trust, &c., said petition was ordered to be filed, and that process issue thereon.

From that decree Hammond and wife, Mrs. Wysong and Mrs. Janney (the husbands of the two last being dead) obtained an appeal September 19, 1876, lacking about three months of being five years from the date of the decree appealed from (December 20, 1871.)

*Charles J. Faulkner* and *William H. Travis*, for appellants.

*George M. Beltzhoover*, for apellant  D. F. Shoemaker, cited the following authorities:

1 Mad. 83; Story Eq. Jur. §525 ; 2 Matt. Dig. 182, n.; 2 Lom. Ex'rs 521; 12 Leigh 112, 113; Matt. Guide 158, 159 ; 2 Matt. Dig. 184, n. ; 3 Munf. 288; 4 Call 453.

*McDonald & Beckwith*, for appellee, cited the following authorities:

Acts of 1872-3 p. 61 §17 ; 10 Leigh 443; 1 Rand. 75 ; 2 Rob. Pr. (Old) 323, and cases cited ; 4 Rand. 456; 1 Johns. Ch. 10 ; 4 H. & M. 476 ; 1 Hopkins Ch. 471 ; 9 W. Va. 96 ; 6 W. Va. 17 ; Code 1849 ch. 132, §23 ; 12 Leigh 143; Story on Contr. §444; 1 Story Eq. §190 and note; 27 Gratt. 403 ; 13 Gratt. 705.

MOORE, JUDGE, delivered the opinion of the Court :

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

It is urged by the appellants, that the court erred in the order of September 17, 1869, by instructing the commissioner, that in settling John H. Campbell's administration account, "the settlement heretofore made before commissioner Stone, and approved by the county court of Jefferson, *is to be taken as correct, except so far as the same, or any of the items therein, shall be proven to be otherwise;*" First—" because the allegations of the bill, if true, deprived that document of all weight and credit as a fiduciary account, and as that bill was not answered, and was taken for confessed, the statute of our State imperatively required that all those allegations were deemed true, and dispensed with all proof of the same;" Secondly—" Because when that interlocutory decree was so entered, the administrator was in contempt of the court, had refused to exhibit his vouchers before commissioner Cooke, and had refused to give any account of his agency."

The order of September 17, 1869, is the one known as the consolidation order, in which the two suits: the *injunction* suit and the suit for *surcharging* and *falsifying* the *ex parte* account of Campbell, settled by commissioner Stone, were heard together ; the injunction suit was heard, as the order states, "upon the papers previously read in the cause, and the report of master commissioner James D. Fayman, returned and filed July 26, 1869, with the exceptions to said report;" and the other suit was heard " upon the bill filed by the distributees of Thomas Campbell, deceased, to surcharge and falsify the account by John H. Campbell, administrator of said Thomas Campbell, deceased, and upon the orders of the 15th day of January, 1858, and 3d day of November, 1858."

It appears from the order of January 15, 1858, that leave was given to the defendants, on their own motion, to file their answers in the suit for surcharging &c., within sixty days from the rising of the court, such an-

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

swers to be subject to all proper exceptions; and the supplemental record, brought up in obedience to the *certiorari* from this court, shows, that John H. Campbell did, on the 30th day of May, 1859, file his answer to the bill, and that the plaintiffs replied generally thereto. Hence it is not true, that the order of September 17, 1869, was made upon the bill taken for confessed, nor does it claim to be. In fact, as the two suits were then heard together, as the order states, all the parties were before the court, when the order was made, John H. Campbell by his bill of injunction, and by his answer to the other suit, and the other parties by their bill in the cause to surcharge and falsify, and by their answer to the injunction bill.

It is true, that the order of the court, made September 17, 1869, does not intimate, that the surcharging and falsifying cause was heard also upon the answer filed by John H. Campbell; nor does the record disclose, what the answer was.

The writ of *certiorari* has failed to bring up the answer, and no attempt has been made to account for its absence from the record; but whether it was before the court, or not, at the time the order of September 17, 1869, was made, the court was certainly justified under the circumstances, and by the state of the pleadings in the two causes, to make such an order. Nothing had been done in the surcharging and falsifying cause since the order of November 3, 1858, when the court, acting upon the report of commissioner Cooke, made under the order of January 15, 1858, overruled the rulings of said Cooke, and virtually recommitted the cause.

The plaintiffs remained idle and the suit remained non-prosecuted until August 4, 1867, when John H. Campbell himself urged it up by filing his injunction bill, involving the same issues and connecting his suit with the original suit by direct allegation of the institution, pendency and non-prosecution thereof, and prayed a reference to a commissioner to settle his account nearly

nine years after the November order had been made. No explanation is made for this long failure to prosecute; but so far as the plaintiffs in the original suit were concerned, they seemed to have abandoned it; but by answering the injunction bill in the manner they did, the two causes were blended by the concurring action of the parties, and presented anew for the consideration of the court the pretensions of the parties respectively; and therefore even had there been no answer to the original bill by Campbell, the filing of the injunction bill by him, under the circumstances, might, as in *Kyle's ex'or* v. *Kyle*, 1 Gratt. 526, serve the double purpose of an answer and cross-bill in the first suit, and justify the court in proceeding to consider and decide the cause upon its merits, and consequently the court had the right to recommit, or refer the cause, as it did, to commissioner Fayman, to state fully the administration account of John H. Campbell, although the former order remained unexecuted.

But it is argued, that it was error to enter the order of September 17, 1869, because at that time John H. Campbell "was in contempt of the court, had refused to exhibit his vouchers before commissioner Cooke, and had refused to give any account of his agency."

The order of November 3, 1858, was made upon consideration of commissioner Cooke's report, showing that John H. Campbell "refused to produce the vouchers, which were before commissioner Stone, when he made the *ex parte* settlement," and the court adjudicated, that Campbell was " bound, on the requisition of the plaintiffs, to produce the vouchers," and " to produce a detailed statement of his agency account." No opportunity was ever afforded John H. Campbell, after the making of that order, to produce the vouchers, nor to produce a detailed statement of his agency account, as the order of reference was never attempted to be executed until after Campbell put the whole matter again in motion by filing the injunction bill, and the court by the order of April,

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney el al
v.
Campbell's
adm'r.

Syllabus 1.

1878
Special Term.

Campbell's
adm'r.
v.
White, trustee,
et al.
and
Janney et a.
v.
Campbell's
adm'r.

1868, upon the bill being taken for confessed, referred that cause to a commissioner to take and settle the administration account of Campbell, &c., and by the order of Sctempber 15, 1869, recommitted that suit and referred the cause for surcharging and falsifying, &c., to commissioner Fayman. Up to this last order Campbell was not in contempt, but on the contrary was aiming to have the matters in controversy settled; and under this last order the court did all it could do under the circumstances, and that was, to recommit and refer the cause to commissioner Fayman, to execute the orders of the court, which, it seems, the other commissioner had failed to do.

Obedient to the requisitions made by the September order, Campbell answered under oath, November 1, 1869, that the vouchers had been destroyed by a fire, which destroyed his house, July 27, 1869; and that he was unable to give a detailed statement of his agency account, except as to the $1,000.00 bond, "because he never kept such a statement, and was never required or requested by his father so to do."

Soon thereafter, John H. Campbell died, and his death was suggested to the court at the April term, 1870; and upon the 20th day of September, 1871, upon an affidavit filed, of one Henry Dunner, tending to show that the vouchers might yet be accessible in the settlement of Campbell's administration account, commissioner Fayman was directed "to summon the personal representative of John H. Campbell, deceased, before him, and otherwise ascertain, if said vouchers are in existence and are now accessible;" and that he revise and correct his former report by any proper and legal evidence produced before him. Acting upon this order, Fayman, still failing to discover the vouchers, made his report upon the evidence before him, with the alternate statement, which forms the basis of the decree of September 30, 1871.

The instruction given by the court to the commissioner, "that the settlement heretofore made before commis-

Syllabus¶2.

1878
Special Term.

Campbell's
adm'r
v.
White. trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r

sioner Stone, and approved by the county court of Jefferson, is to be taken as correct, except so far as the same or any of the items therein, shall be proven to be otherwise" is what the statute, Code 1849, p. 552, chap. 123, § 23, itself declared, viz: "The report, to the extent to which it may be so confirmed, shall be taken to be correct, except so far as the·same may, in a suit in proper time, be surcharged or falsified." And the same provision was retained in the Code of 1860, chap. 132, § 23, and in the Code of West Va. chap. 87, § 22, and has been the rule announced by the courts not only of this country but of England also.

But it is argued, that the court erred in instructing the commissioner, that "the alleged indebtedness of John H. Campbell to the estate, prior to the death of his father, the intestate, if any such exist, will be embraced by said commissioner, the same being regarded by the court as necessarily involved in said settlement made by commissioner Stone, *but the presumption in favor of the correctness of said account is in like manner to apply to it.*"

Syllabus 3.

The counsel for appellants designate that provision as "*singular.*" It certainly is vague. I can give no other interpretation to it, than that the court intended the commissioner to settle, in connection with the administration account, the agency account of John H. Campbell, it being necessarily involved in ·the settlement made by commissioner Stone of the administration account; and that so far as Stone's settlement had stated the agency account between John H. Campbell and his father, it should be taken as *prima facie* correct, until surcharged or falsified. It could not have meant the settlement of an account merely of the indebtedness·of John H. Campbell to the estate prior to the death of his·father. If it did mean that,· then the instruction would have been adverse to Campbell and favorable to the appellants, and could not be an error, for which appellants could appeal. Obviously it applied to the whole agency account; and the presumption of correctness was to apply to only so much

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney, et al.
v.
Campbell's
adm'r.

thereof as had been stated in the account as settled by Stone and approved by the county court, whilst the items *extra* the Stone settlement should be governed by proper proof; and that was as far as the court could go. It could not decree that an account, not yet taken, should be presumed to be correct *prima facie ;* and an Appellate Court will not presume that such was the decree, unless the language thereof plainly shows, that such was the intention of the court.

As to the decree of December 30, 1871, it is argued, that the court erred : First—In allowing the $1,000.00 bond of January 1, 1846, alleged to have been given to John H. Campbell by his father for services, &c.; Second—In allowing the $300.00 per annum to said Campbell for personal services from January 1, 1846, for seven years and seven months, with interest ; Third—In allowing the amount of the Fry & Co. debt of $3,437.81 ; Fourth—In confirming the commissioner's report, in which John H. Campbell is not charged as administrator, nor is Orra S. Janney allowed as a credit the amount of a Virginia State bond for $4,700.00; and Fifth—In making any final decree, without requiring an account to be settled by John H. Campbell of his agency, &c.

As argued by counsel for the appellee, the real question before the court was, whether the *ex parte* settlement of John H. Campbell, as administrator of his fathers's estate, made before commissioner Stone had been successfully surcharged or falsified ? "

In the *ex parte* settlement commissioner Stone allowed John H. Campbell credit for the $1,000.00 bond of January 1, 1846, with interest on same to November, 1855, $590.00. He allowed said Campbell $300.00 per annum, for his services rendered to his father, from January 1, 1846, to August 1, 1853, seven years and seven months, amounting to $2,275.00. He allowed Campbell credit for cash paid Lewis Fry & Co., February 10, 1854, $3,437.81.

The bill attempts to surcharge and falsify those items,

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

under the statute, before cited, Code 1849, ch. 132, §23, and Codes subsequent, those items shall be taken as correct until surcharged or falsified.

Have they been surcharged or falsified, by proper proof?

By the several references of the matter to commissioners, every opportunity was afforded the parties, to sustain the allegations of their bill, as to the incorrectness of those items, by surcharging and falsifying them. Upon examination of the exceptions made to Fayman's report of September 14, 1871, by both parties, it is noticeable, that but one item of the account was excepted to by the plaintiffs in the surcharging and falsifying suit, viz: the allowance as a credit of the Lewis Fry & Co's debt of $3,437.81; and on the part of the administrator of John H. Campbell, deceased, the disallowance of the $1,000.00 bond was excepted to by his counsel.

The court, acting upon that report and the exceptions thereto, on the 20th day of September, 1871, recommitted the report to the commissioner with instruction, that he proceed to revise and correct it "by any proper and legal evidence, that may be produced before him." Thus again was an opportunity afforded the parties to surcharge and falsify.

Fayman filed his revised and corrected report November 24, 1871, wherein he had made alternate statements of the disputed items or credits, thus casting upon "the court the burden of deciding as to the admission" of those items of the administration account. No exceptions were filed to this report, and the court was thus permitted to confirm it, in the manner stated in the decree, without objection.

In the case of *Reitz & Co.* v. *Bennett et al.*, 6 W. Va. 418, this court held : "As a general rule, though perhaps not universal, when there are no exceptions filed to a commissioner's report, and the report is confirmed by decree of the court below, an Appellate Court will not look into the report. The parties in interest will be

Syllabus 4.

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

taken to have acquiesced in the report." * * * "But this rule does not apply where the decree rendered upon the report is materially contrariant thereto," * * * "Although no exceptions are filed to a commissioner's report, and the report is confirmed, if the decree of confirmation upon its face shows material error as to matter of law, prejudical to the appellant, for such error the decree should be reversed."

Applying that rule to this case, there being no exceptions to the report, the parties in interest will be taken to have acquiesced in it; and this court will not look into it, unless the decree is materially contrariant thereto, or shows material error as to matter of law prejudicial to the appellants.

The appellants do not claim, that the decree is at all contrariant to the report, nor does the decree show upon its face material error as to matter of law prejudicial to the appellants. The report of Fayman, as to the items complained of, virtually accepted Stone's report thereto as correct, there being, in his opinion as stated in a former report, nothing in the depositions "falsifying, or surcharging, one item as charged therein." The only difference in his report from that of Stone's is the alternate statements of these three items: the $1,000.00 bond, the $300:00 per annum and the Lewis Fry & Co. debt. These alternate statements were necessary, because, as these items were disputed, the account would vary according to the allowance, or disallowance, of them; and therefore "the attention of the court was necessarily directed to them," in order to decide, which statement should be confirmed; and that decision would depend upon the weight of evidence upon surcharging, or falsifying, them, which of course necessitated the court to inspect that evidence closely. That the court weighed that evidence is manifest, as the decree states the opinion of the court to be "that none of the items contained in the *ex parte* settlement made by master commissioner Stone, have been successfully surcharged and falsified."

Syllabus 5.

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

Syllabus 6.

The court therefore starting with the presumption, that the *ex parte* settlement made by Stone was *prima facie* correct, and guided also by the principle as laid down in *McCall* v. *Peachy's adm'r*, 3 Munf. 288, and *Tabb* v. *Boyd*, 4 Call. 453, that vouchers, which cannot be produced on the new settlement, upon a bill to surcharge and falsify a former settlement, may be presumed to have existed, and in every such case the *onus probandi* is thrown on the adverse party, and that this rule should be strictly adhered to, when there has been a great lapse of time, (2 Matthew's Dig. 184, note, and *Burwell* v. *Anderson*, 3 Leigh 353), had but little evidence to consider as to the $1,000.00 bond. An attempt was made to show, that the bond was made without consideration. On direct examination Mrs. Wysong deposed as follows, March 12, 1869 :

"Question by defendants—In the administration account of Mr. John H. Campbell there is charged as due him, John H. Campbell, a bond of one thousand dollars ($1,000.00), dated January 1, 1846, and drawn by Thomas Campbell. Have you any knowledge of this bond? And if so, state all you know about it, especially the object for which it was given.

"Answer—It was given him as a pocket bond to give him credit in the bank, and to indemnify his indorsers, William Ferguson and James Gunnell. He said, they would not go on his note, unless such a bond was given by my father. Father gave him the bond with the understanding, that it was to be returned when the bank debt was paid.

"Question by same—Please state the transaction in which Mr. Ferguson and James Gunnell became endorsers on a note in bank of your brother, John H. Campbell?

"Answer—It was to borrow some money out of the bank. I think it was in Winchester—the Valley Bank.

"Question by same—Do you know how that note was paid?

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

" Answer—I suppose it was from the crops from the farm.

" Question by same—Were you present, when any conversation took place between Mr. John H. Campbell and your father in reference to the bond, which you call a pocket bond? And if so, state what that conversation was?

" Answer—My father asked him for the bond, he said, without being in my presence; and I heard my father ask him, my brother, for the bond a number of times. My brother never made him any reply—would hurry out of his presence and leave him and hoot at him."

On cross-examination she deposes as follows :

" Question by plaintiff—In your answer to the 15th question, you state, that a certain $1,000.00 bond, dated January 1, 1846, executed by Thomas Campbell to John H. Campbell, was given as a pocket bond. Were you present when this bond was executed ?

" Answer—I was not present, when the bond was executed; but I was present, when my brother returned from consultation with William Ferguson and James J. Gunnell, his endorsers, and said it was necessary that he should have a pocket bond.

" Question by same—To whom did he say this ?

" Answer—John H. Campbell said it to my father.

" Question by same—What did your father say in reply ?

" Answer—I do not remember.

" Question—Do you remember, whether your father made any objection to executing this bond or not ?

" Answer—If he had made objection, he would not have given the bond.

" Question by same—Can you state, why it was the bond was not given at the time John H. Campbell returned from the consultation and said to your father in your presence, it was necessary to give the bond, if he did not object ?

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Jauney et al.
v.
Campbell's
adm'r.

" Answer—He was not ready to give it, I suppose.

" Question by same—Do you not know the fact, that your father was the first endorser on all moneys borrowed by John H. Campbell out of bank?

" Answer—I know, that he sometimes endorsed John's notes in bank—whether first endorser, or not, I do not know.

" Question by same—If he was in the habit of endorsing John H. Campbell's paper, can you explain, why it was imagined, that this bond could give J. H. Campbell any further credit in bank?

" Answer—It was to give him credit, and to indemnify his endorsers, William G. Ferguson and James Gunnell. My brother stated so to father in my presence.

" Question by same—Do you know, whether your father was, or was not, an endorser on this Ferguson and Gunnell note, of which you have spoken?

" Answer—I do not know it.

"Question by same—Did you understand from your father, whether he was on that note, or not?

"Answer—I did not.

"Question by same—State at what time of the year it was, that you heard John H. Campbell, after consultation with Ferguson and Gunnell, tell your father, it was necessary for him to give this $1,000.00 bond.

"Answer—I do not recollect what time of the year it was.

"Question by same—You say, you have heard your father ask John H. Campbell to give up this bond. I wish you to state in detail, when and where it was, you first heard your father ask him to give up this bond, who was present, what your father said, and what reply was made by your brother. State all that occurred in detail.

"Answer—My mother and sister, Mrs. Hammond, were present at our house, the first time I heard him—for it was in the dining-room; the day and year I do not re-member; but I heard—ask for it a number of times.

"Question by same—On the occasion, to which you re-

1878
Special Term

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r

fer in last answer, state at what season of the year it was. Was it in the summer or winter time?

"Answer—I do not remember, at what season of the year it was.

"Question by same—Do you remember, what your father said, and how the matter came up, and what reply John H. Campbell made at this interview in the dining-room?

"Answer—I do not remember how it came up. He asked John for the pocket bond; he said he wanted it. John said, "Boo!" and walked out of the dining-room.

"Question by same—How often have you heard Thomas Campbell ask John H. Campbell for this bond?

"Answer—I did not set the number of times down.

"Question by same—Do you think you have heard your father ask for this bond as often as ten times?

"Answer—Do not remember how many times.

"Question by same—Please repeat above *question*.

"Answer—I did not count the number of times.

"Question by same—Have you heard your father ask for this bond more than twice?

"Answer—Yes; I have heard him ask for it more than twice.

"Question by same—Can you state any particular occasion, when you heard him ask for it, except the one in the dining-room, of which you have spoken?

"Answer—I have told you all I know.

"Question by same—Do you remember any occasion, when this bond was asked for, when anybody but you and your mother and sister were present?

"Answer—I do not.

"Question by same—On these various occasions, when you say you heard your father ask John H. Campbell to give up this bond, and he would not do it, can you state whether John H. Campbell on any of these occasions gave any reason, why he would not give up this bond? If so, what reason did he state?

1878
Special Term .

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r

"Answer—I did not hear him give any reason upon any of these occasions."

The purpose assigned by the witness for the execution of the bond is, at least, singular. "It was given him as a pocket bond to give him credit in the bank, and to indemnify his endorsers, Wm. Ferguson and James Gunnell. He said they would not go on his note, unless such a bond was given by my father. Father gave him the bond with the understanding, that it was to be returned, when the bank debt was paid."

How did she know it was given for that purpose? She says, "I was not present, when the bond was executed; but I was present, when my brother returned from the consultation with Wm. Ferguson and James J. Gunnell, his endorsers, and said it was necessary that he should have a pocket bond." She remembered, that John H. Campbell said that to his father, but did not remember, what his father said in reply. She did not remember the time of year, nor season, she heard Campbell tell his father, it was necessary for him to give this $1,000.00 bond.

She says, that her mother and sister, Mrs. Hammond, were present in the dining room, when she heard her father ask John the first time to give up the bond. She heard him ask John "a number of times" to give up the bond, but did not know how many times; heard him ask for it more than twice. When asked if she could state any particular occasion when she heard the bond asked for, except the once in the dining room, replies: "I have told you all I know." She has never seen the bond, nor does she in any way identify it. The first catechiser, being on her side of the cause, propounded his question to her by first giving her a description of the bond, giving obligor, obligee, amount and date, and from that, as her postulatum, she starts, taking it for granted that this is the same bond, which John had asked his father to give "as a pocket bond," "to indemnify endorsers." When John asked his father to give him such a bond, according to her own statement, it was not then given;

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

nor does it appear from her testimony, that the father ever did give such a bond; whilst, on the other hand, the testimony of the other witnesses tends strongly to show, that the bond, stated in the account, was for services rendered.

She says: "Father gave him the bond with the understanding, that it was to be returned, when the bank debt was paid." How did she know, that was the understanding? Her testimony does not disclose how she learned what was the understanding.

The counsel for appellee has well said: "How could a bond of this sort, given by the father to the son, possibly operate to indemnify the endorsers of the latter? The father's own prior endorsement of the note in bank would give them the benefit of his personal credit; or an indemnifying bond with a penalty, in the usual form, would do the same thing; but how could a simple bond to John H. Campbell, payable to him, and held by him for his own use, operate as any kind of indemnity to his endorsers? "And how does the mere demand by the father affect the case? Was not the demand    *    * met with a refusal?" The mere demand is nothing, unless met by some admission on the part of the obligee. And the refusal to surrender it, upon a demand made not as a matter of right, not claiming that it was a "pocket bond," nor claiming that it had been satisfied, in fact, without making known any cause, or foundation for the demand, is no admission on the part of the obligee, that it should be delivered up; but on the contrary, the presumption is, that the obligee claimed, that the bond was justly due him; and therefore, as there was a dispute about it, the possession of the bond threw the burden of proof on the obligor to show, that he did not owe the amount of the bond.

The deposition of Mrs. Hammond was taken November 7, 1868, which was excepted to, on the ground that she was incompetent to testify in behalf of her husband. The debt reported in her favor is really payable to her

husband. It is not a separate estate; nor does she claim it as such. Allen C. Hammond, her husband, united with her in the suit, and as argued, his receipt would be a discharge. It is a chose in action, which he had the right to reduce into possession, therefore, as held in *Rose & Co. et al.* v. *Brown et ux*, 11 W. Va. 122, and *Hill et ux.* v. *Proctor*, 10 W. Va. 59, her evidence could not be received. But even if it could be received, it certainly failed to show, that the bond herein considered was the same she testified to; and even the bond she speaks of as being given in a bank transaction, she says she was not present when it was given; that she heard her father say, for what it was given (whether in her brother's presence or not does not appear). But when asked: "State as well as you can now recollect, what your father did say this bond was given for?" answered: "I do not remember; I cannot recollect the words he said." "State the substance of what he said." Answered: "I cannot state the substance of what he said, except that he asked for the bond, and said it was not a debt he owed my brother John." "What did John H. Campbell reply to this statement of your father?" Answered, "I don't recollect."

Certainly such testimony is too weak to falsify the *ex parte* settlement. But John H. Campbell's statement under oath, not excepted to, contradicts directly the statements of both Mrs. Wysong and Mrs. Hammond. And John J. Monroe was of "the impression," that he was present, when the note was given, and says: "I cannot state the particulars now; but my understanding was, that it was given by Thomas Campbell for compensation for services of John H. Campbell up to that time." In another deposition, he says: "I don't think I was told, what the bond was given particularly for."

The evidence is full and strong, that John H. Campbell's services to his father were worth from $300.00 to $500.00 *per annum*; and that those services were rendered from 1836, Mrs. Wysong says, 1840. The bond was

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

Syllabus 7.

1878
Special Term

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

made January 1, 1846; and upon the evidence, it would seem to be small pay for the many years of care and vexation, that such kind of service, as he rendered, necessarily threw upon him.

Thus impressed, I am of opinion, that the decree is right in allowing the credit of the $1,000.00 bond and the interest due thereon.

As to the $300.00 *per annum*, allowed for services from January 1, 1846. It is not necessary to encumber this opinion with citation of the full and weighty evidence showing, that the services were worth from $300.00 to $500.00 *per annum*, when no evidence is offered to falsify it.

It is claimed, that a part of this account was barred by the statute of limitations, and a portion of it was subsequent to the death of Thomas Campbell, who died in the autumn of 1852. Commissioner Stone in the *ex parte* settlement report, on that point says: "I have had testimony before me as to the value of his said services during the time mentioned, and a number of disinterested persons, who know the nature of the services rendered by the said administrator, testified that $300.00 *per annum* was but a poor compensation for the services performed by him during said time."

What was the nature of the testimony, the commissioner had before him on that point, other than the oral testimony of the "disinterested persons," can not now be known; the vouchers, then before the commissioner, have, like the commissioner and administrator themselves, by the lapse of time passed away. Those vouchers may have been of such a nature as to repel the statute of limitations, for aught we know; and now, after the lapse of over twenty years, it would be preposterous in us to lay aside the rule laid down for our guidance by the authorities cited, that we shall presume such vouchers did exist, and no change shall be made in the accounts, except such changes be established by satisfactory evidence."

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

The last alternate statement considered by the court is the Lewis Fry & Co.'s debt. The administrator was allowed a credit of that debt, $3,437.81. The bill charges that this amount was due on note given by John H. Campbell personally to Lewis Fry & Co. What Campbell's answer on that point was, cannot now be known, as the answer is not produced before us; but from the statement made in the *ex parte* settlement, and the subsequent reports of settlement, and the action of the court in forwarding the proceedings, it is reasonable to presume, that on this point the answer denied the allegation, and put the parties upon proof of falsification. No proof is offered to falsify the item; whilst commissioner Stone's report shows, that the administrator "in many instances gave his own notes for settlement of debts due from his father. These notes given by him for debts due from his father, and for money borrowed for his use previous to his death, and some, that were given soon after the death of his father and before he qualified as administrator, have been paid by the said John H. Campbell, and he has produced them among his other vouchers for disbursements made by him on account of said estate. Your commissioner has had evidence before him of many persons living in the neighborhood of the intestate and his administrator, who testified to the fact of having had dealings with the intestate for several years previous to his death; and that in making settlements the said John H. Campbell gave his own note in place of his father for the account due in said settlement in making purchases at public sales for the use of his said father. The said administrator also gave his own note, with security; for, as before stated, his father attended to no business whatever for several years preceding his death; of this your commissioner has been fully satisfied."

Among the items allowed by commissioner Stone of that character is this Lewis Fry & Co.'s note. Now the same presumption of correctness of the settle-

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

ment as conceded applied to the other items of the account, certainly should apply to this item, in the absence of any evidence tending to falsify it.

Commissioner Fayman in his report of September 14, 1871, says, that "he submits the testimony relative to the sale of some negro slaves some time during the war (say 1862) by the administrator, John H. Campbell, through one Dr. Hammond, which amount of sale, $4.700.00, under direction of said administrator, said Hammond invested in bond, as will be seen by testimony herewith sent, No. 1,148. Numerous depositions taken by both sides are herewith respectfully submitted."

"Where it is referred to a master to examine and report as to particular facts, or as to any other matter, it is his duty to draw the conclusions from the evidence before him, and to report such conclusions only ; and it is irregular and improper to set forth the evidence in his report, without the special direction of the court," 2 Dan'l Ch. Pl. & Pr. 1299, n. 7, ed 4th. "When a Master is directed to ascertain a fact, he must not content himself with stating these circumstances and leaving the court to draw its own conclusion, but he must draw the conclusion himself; and if he does not do so, either party is at liberty to except to the report for not having stated that conclusion, for which the party objecting contends," Id. 1298, notes 4, 5.

The same author states, "that, even when the evidence is such, that it is impossible to arrive at any degree of certainty upon it, yet, if it is sufficient to afford a reasonable ground of presumption one way, or the other, the master is bound to find in favor of such presumption. The master however is not bound to state inferences of law arising from the facts before him ; and where facts are so clearly stated in a report as necessarily to involve a particular consequence, it is for the court to act upon the facts so reported ; and it would not be a proper ground of exceptions, that the master had omitted to

point out the consequence." *Id.* pp. 1298, 1299 and notes.

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

The order of reference made at the April term, 1868, by the court, in *Campbell* v. *White, trustee, &c.*, directed the commissioner to "take and settle the administration account of complainant as administrator of Thomas Campbell, deceased, that he ascertain and report the amounts advanced by complainant for the discharge of the liabilities of said estate beyond the personal assets that came into his hands, and whether the personalty has been fully administered, and if not, what amount available remains unadministered; that he ascertain and report the amount due to the defendants, respectively, on account of the trust claim in the bill named, if anything, charging the defendants with their proper proportion of any amounts found to have been advanced by complainant in discharge of liabilities of the estate beyond the personal assets administered, and any other matter by the commissioner deemed pertinent, or required by any of the parties."

In regard to the negroes, as to whether they were to be deemed personal assets in the hands of Campbell as administrator of the estate of Thomas Campbell, deceased, or the absolute property of Janney under the partition and assignment made by the commissioner, the commissioner fails to give his conclusion, as would have been proper for him to have done, but submits the testimony on that point to the court for it to draw the conclusion. The court might well have recommitted the report to the master commissioner on that point to have drawn his conclusion from the testimony and facts before him. But as Campbell alleges in his bill "that the slaves were divided among the distributees, under an arrangement entered into by all of them, that each should pay his or her respective portion of the debts, over and above what the assets would cover," which distribution of the slaves the Hammonds and Wysongs admit in their answer to the bill (Janney not answering, the bill was taken

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et a
v.
Campbell's
adm'r.

for confessed as to her), the question involved is fairly raised by the pleadings, and as Campbell's testimony is somewhat variant from the written proof as to the character in which he took, and held, and finally disposed of the slaves, I deem this submission of the evidence and facts, in this instance, to the court, of that character deemed not improper, it being considered by the commissioner pertinent, and of that nature, which would enable the court readily to draw the conclusion.

From Campbell's own showing by the *allegata* of his bill, "it was well understood, that the debts of the estate would largely exceed the personal assets other than the slaves left by the intestate, the slaves were divided among the distributees, under an arrangement," &c., "that each should pay his or her respective portion of the debts, over and above what the assets would cover." The commissioner shows by his report "the respective portion of each distributee of the debts, over and above what the assets would cover," as follows: Amount due Campbell per account at July 1, 1871, $2,068.68¾. Amount due Campbell for one-fourth services rendered, 7 years, 7 months, at $300.00 per year, and interest $1,-180.15¾. Amount due Campbell, per one-fourth note $1,000.00 and interest, $527.50. Total, $3,776.34½, which is the amount of indebtedness decreed in favor of Potterfield as administrator of John H. Campbell, deceased, against Mrs. O. S. Janney.

All the other distributees were permitted to hold the slaves assigned to them in the distribution made by the commissioners; and of course it was equal justice, that Mrs Janney should have her share of the slaves, or have credit allowed her for their actual value; yet the commissioner has allowed her nothing for them, whilst he holds her responsible for her proportion of the excess of indebtedness of Thomas Campbell's estate to his administrator, and the court has decreed accordingly by its decree of December 30, 1871.

John H. Campbell in his deposition tries to show, that

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r,

he took the slaves and disposed of them on account of debts due him personally from Dr. Janney, and inferentially for debts due the estate of Thomas Campbell. There is nothing in the record showing such debts due Thomas Campbell's estate. But there is a receipt, dated January 18, 1860, given to Mrs. Orra S. Janney by said John H. Campbell as administrator of Thomas Campbell, deceased, for the following negroes : Harriet and her three children ; also negro girl Charity. In that receipt, Campbell says : "I have this day received said negroes, as the surviving administrator, and upon a full settlement of the estate of Thomas Campbell, deceased, I will pass over to Orra S. Janney, as distributee of said estate, such negroes of hers as may not be required to pay the debts of the estate of Thomas Campbell, deceased."

It appears further, that, as such administrator, he did sell the negroes at Richmond by Hammond, in 1862, for confederate money, which was invested in a registered bond of the State of Virginia (No. 1,148) by his instruction to Hammond, October 2, 1862, and Campbell received said bond from Hammond, October 21, 1862, for which he gave Hammond his own bond, to indemnify him, as the bond states.

Now in the face of all these facts it seems to me contrary to the principles of equity, to have confirmed the commissioner's report as to its finding against Mrs. Janney, without allowing her credit for the actual value of the slaves at the time they were sold, to-wit, October 2, 1862, by direction of John H. Campbell as administrator of the estate of Thomas Campbell, deceased.

I am therefore of opinion, that the court should have directed a recommittal of said report to the commissioner, as to Mrs. Janney, with instruction to him to ascertain the actual value of said slaves, at the time they were sold, to-wit, October 2, 1862, and to restate the account of John H. Campbell as administrator of the estate of Thomas Campbell, deceased, with Mrs. Orra S. Janney,

1878
Special Term.

Campbell's
adm'r
v.
White, trustee,
et al.
and
Janney et al.
v.
Campbell's
adm'r.

on the basis adopted by the commissioner, Fayman, in his report and confirmed by the decree of December 30, 1871, and now approved by this court, giving to said Orra S. Janney credit for the actual value of said slaves, as of October 2, 1862.

I am further of opinion, that the report of commissioner Fayman should have been confirmed, as the court did, in all other respects; and that there is no error in the decree of December 30, 1871, as to those matters; but in so far as said decree confirmed said report as to Mrs. O. S. Janney, and decrees, that Truman W. Potterfield as administrator of J. H. Campbell, deceased, recover against O. S. Janney the sum of $3,776.34 with interest on $1,985.53, a part thereof, from July 1, 1871, until paid, and one-third the costs of these suits incurred by J. H. Campbell and his administrator, should be reversed; and the said matter of costs as to her should be left open, until the final decree in these causes, as to her, is pronounced; and the appellee, O. S. Janney, must recover her costs in this court against the said Truman W. Potterfield as administrator of said J. H. Campbell, deceased, to be levied of the assets in his hands, or which may come into his hands as such administrator; and the cause must be remanded to the circuit court for the county of Jefferson, for such further proceedings therein there to be had, according to the principles settled in this opinion, and further according to the principles and rules governing courts of equity.

JUDGES HAYMOND AND JOHNSON CONCURRED.

DECREE AFFIRMED IN PART AND REVERSED IN PART
CAUSE REMANDED.